RUSSELL v. THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 19,593. Filed October 25, 1901.]

CARRIERS.—*Contracts.*—*Release from Liability for Injuries to Sleeping Car Employes.*—A contract entered into between a sleeping car company and a porter in charge of one of its cars releasing transportation companies over whose lines the coaches of the sleeping car company were being run from all claims for liability of any nature or character on account of any personal injury or death while traveling over such lines in said employment and service, is valid, and inures to the benefit of a railway company transporting the coach in which the porter was injured. *pp. 306-320.*

CARRIERS.—*Contracts.*—*Exemption from Liability for Negligence.*—A contract entered into by a sleeping car employe releasing transportation companies "from all claims for liability of any nature or character whatsoever on account of any personal injury or death" includes injuries resulting from the negligence of a transportation company. . *p. 318.*

From Marion Superior Court; *Vinson Carter,* Judge.

Action by Ambrose Russell against the Pittsburgh, etc., R. Co., for an injury sustained while acting as a porter on a Pullman sleeping car attached to defendant's train. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*A. C. Ayres, A. Q. Jones* and *J. E. Hollett,* for appellant. *S. O. Pickens* and *F. C. Olive,* for appellee.

DOWLING, J.—This was an action by the appellant, Ambrose Russell, against the appellee, The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, for an injury sustained by appellant while acting as a porter upon a Pullman sleeping car attached to appellee's passenger train. The complaint alleged that on the 21st day of August, 1898, appellee operated a railway line through this State; that near the town of Cementville, Indiana, a sidetrack ran parallel to, and a few feet from, the side of the main track of appellee's line, and was used by the appellee in switching and operating cars; that on the said date appellant was employed as a porter on a Pullman coach attached to and constituting a part of a certain passenger train operated by the appellee; that as said passenger train was moving rapidly over the main tracks near the town of Cementville, and passing by another train of the appellee upon the side-track, the appellant, who was at the time seated near a window of the Pullman coach, was suddenly struck by a door or other obstacle which the appellee had carelessly allowed to project from the train of cars upon the side-track, or from its right of way at that point; that the said projection entered the window of the car in which the appellant was seated, and struck him upon the arm and

elbow, breaking and crushing them, whereby they were rendered stiff, sore, and permanently disabled. The complaint denies negligence on the part of the plaintiff, and avers that the accident was occasioned wholly by reason of the negligence of the appellee.

To the complaint, the appellee filed answers in three paragraphs, the first being a general denial, which was afterwards withdrawn. The second paragraph alleged that a written contract had been entered into between the appellee and the Pullman Palace Car Company, by which the latter company agreed to furnish sleeping cars to be used for the transportation of passengers over the road of appellee; that said Pullman Car Company was, by said agreement, entitled to and did collect revenue from all passengers using its cars; that it furnished one or more employes upon each of such cars, who were, by the said contract, carried free of charge over the road of the appellee. It was further stipulated in said agreement that, in the event of any liability arising against the said railroad company, over whose railroad said cars were to be run, for personal injury, death, or otherwise, of any employe of said Pullman Palace Car Company, the said railroad company should be indemnified for said liability, and the same paid by said Pullman Palace Car Company. The answer then alleged that the appellant, at the time of the accident, was an employe of the Pullman Company, in charge of one of that company's sleeping cars, and was being hauled in said car in compliance with the contract above referred to; that he had neither paid, tendered, nor agreed to pay, any fare for his passage; that he had, prior to the injury complained of, agreed in writing with said Pullman Company as follows: "Fourth: In consideration of said employment and wages, I undertake and bind myself to assume all risks of accidents or casualties by railway travel or otherwise, incident to such employment and service, and hereby for myself, my heirs, executors, administrators, or legal representatives, forever

release, acquit and discharge said Pullman Palace Car Company, its assigns and legal representatives, from any and all claims for liability of any nature or character whatsoever, on account of any personal injury or death to me in such employment and service. Fifth: I undertake and bind myself to obey all rules and regulations of the transportation companies made for the government of their own employes, over whose lines the cars of said Pullman Palace Car Company may operate, while I am traveling over said lines in the employment and service of said Pullman Palace Car Company; and, in consideration of said employment and wages, I hereby for myself, my heirs, executors, administrators, or legal representatives, forever release, acquit and discharge any and all such transportation companies from all claims for liability of any nature or character whatsover, on account of any personal injury or death to me, while traveling over such lines, in said employment and service." The answer alleges that both of these agreements were in force at the time of the accident.

The third paragraph of answer states substantially the same facts as the second, except that no mention is made of the written contract between the appellee and the Pullman Company for indemnity by the latter for liabilities for the injury or death of its employes.

To these two paragraphs of answer the appellant filed separate demurrers upon the ground that neither paragraph stated facts sufficient to constitute a defense to appellant's complaint; which demurrers were overruled and exceptions reserved. On appellant's refusal to plead further, judgment was rendered in favor of the appellee. The appellant assigns for error the overruling of the separate demurrers to the second and third paragraphs of answer. Counsel have discussed both these rulings as involving the same questions, and we shall so treat them.

The principal question here presented is, whether a con-

tract between a Palace Car Company and a porter having charge of one of its sleeping cars, is invalid in so far as it attempts to exempt transportation companies, over whose lines the coaches of the Palace Car Company are being run, from all liability arising from their negligence and the negligence of their servants; and whether such contract may be pleaded in bar of an action by such porter against a transportation company for an injury caused wholly by the latter's negligence.

The decisions of this State firmly establish that a common carrier of goods or passengers cannot contract with a customer for a release of the carrier from liability resulting from the latter's negligence. *Wright* v. *Gaff,* 6 Ind. 416; *Ohio, etc., R. Co.* v. *Selby,* 47 Ind. 471, 17 Am. Rep. 719; *Louisville, etc., R. Co.* v. *Faylor,* 126 Ind. 126; *Insurance Co.* v. *Lake Erie, etc., R. Co.,* 152 Ind. 333, 335.

The grounds upon which this prohibition rests are variously stated by the court. It has been said that such exemptions are against public policy; that the public is interested in the exercise of care and diligence on the part of the carrier; that it is unreasonable for any person or corporation to contract for the privilege of being negligent, and that the public is concerned with the life and security of every citizen. The fundamental reason, however, for holding common carriers, such as the appellee, liable for the results of their negligence, notwithstanding contracts exempting them therefrom, is that the State has granted them privileges which they exercise for the benefit of the public; in return for these, the common carrier impliedly undertakes to use due care and diligence in the transportation of both goods and passengers. This being a main inducement for the grant of its special rights, the carrier cannot by any special contract rid itself of the burden of responsibility, which is one of the conditions of its creation. Were it permitted to escape liability by entering into exonerating agreements, its position of advantage over

its patrons would, in almost every instance, enable it to force from them such stipulations as it desired, and the object of the State in creating the carrier would be virtually defeated, the carrier thus being able to abandon the duty imposed upon it by the State. As said in the case of *Louisville, etc., R. Co.* v. *Faylor,* 126 Ind. 126, at page 130: "A stipulation that the carrier shall not be bound to the exercise of care and diligence is in effect an agreement to absolve him from one of the essential duties of his employment, and it would be subversive of the very object of the law to permit the carrier to exempt himself from liability by a stipulation in his contract with a passenger, that the latter should take the risk of the negligence of the carrier or of his servants. The law will not allow the carrier thus to abandon his obligation to the public, and hence, all stipulations which amount to a denial or repudiation of duties, which are of the very essence of his employment, will be regarded as unreasonable, contrary to public policy, and therefore void."

In *Cleveland, etc., R. Co.* v. *Curran,* 19 Ohio St. 1, 2 Am. Rep. 362, at page 12, the court say: "Carriers, of the class of the plaintiff in error, are creatures of legislation, and derive all their powers and privileges by grant from the public. They are created to effect public purposes, as well as to subserve their own interest. They are intended, by the law of their creation, to afford increased facilities to the public for the carriage of persons and property, and, in performing this office, they assume the character of public agents, and impliedly undertake to employ in their business the necessary degree of skill and care. This obligation arises from the public nature of the employment, and is founded on the policy of the law for the protection of the persons and property of the public, which must of necessity be committed, to a very great extent, to the care of public carriers. * * * It cannot be denied that pecuniary liability for negligence promotes care; and if public carriers

Russell *v.* Pittsburgh, etc., R. Co.

in conducting their business can graduate their charges so as to discharge themselves from such liability, the direct effect will be to encourage negligence by diminishing the motives for diligence."

Again, in *New York, etc., R. Co.* v. *Lockwood,* 17 Wall. 357, 21 L. Ed. 627, cited by the appellant, the Supreme Court of the United States say, at page 377: "In regulating the public establishment of common carriers, the great object of the law was to secure the utmost care and diligence in the performance of their important duties—an object essential to the welfare of every civilized community. Hence the common law rule which charged the common carrier as an insurer. Why charge him as such? Plainly for the purpose of raising the most stringent motive for the exercise of carefulness and fidelity in his trust. In regard to passengers, the highest degree of carefulness and diligence is expressly exacted. In the one case the security of the most exact diligence and fidelity underlies the law, and is the reason for it; in the other, it is directly and absolutely prescribed by law. It is obvious, therefore, that if a carrier stipulate not to be bound to the exercise of care and diligence, but to be at liberty to indulge in the contrary, he seeks to put off the essential duties of his employment. And to assert that he may do so seems almost a contradiction in terms. *  *  * Is it true that the public interest is not affected by individual contracts of the kind referred to? Is not the whole business community affected by holding such contracts valid? If held valid, the advantageous position of the companies exercising the business of common carriers is such that it places it in their power to change the law of common carriers in effect, by introducing new rules of obligation. The carrier and his customer do not stand on a footing of equality. The latter is only one individual of a million. He cannot afford to higgle or stand out and seek redress in the courts. His business will not admit such a course. He prefers, rather, to accept any bill of lading,

or sign any paper the carrier presents; often, indeed, without knowing what the one or the other contains. In most cases, he has no alternative but to do this, or abandon his business. * * * If the customer had any real freedom of choice, if he had a reasonable and practicable alternative, and if the employment of the carrier were not a public one, charging him with the duty of accommodating the public in the line of his employment; then, if the customer chose to assume the risk of negligence, it could with more reason be said to be his private affair, and no concern of the public. * * * The proposition to allow a public carrier to abandon altogether his obligations to the public, and to stipulate for exemptions that are unreasonable and improper, amounting to an abdication of the essential duties of his employment, would never have been entertained by the sages of the law. * * * The inequality of the parties, the compulsion under which the customer is placed, and the obligations of the carrier to the public, operate with full force to divest the transaction of validity."

The inquiry remains, is the present contract of exemption invalid as being within the theory of the rule above explained? If it is, it must be by virtue of some positive statute, or because of the fact that it is an abandonment by the carrier of a public duty.

No statute applies, for the recent act of the legislature, Acts 1901, p. 515, which may possibly include similar agreements, was enacted after the present suit was instituted, and expressly excepts pending litigation from its operation.

In determining whether this contract is invalid, we lay out of the case all consideration of the question whether the appellant was being carried gratuitously or for hire. The law is well settled that mere non-payment of fare, or gratuitous carriage, will not of itself deprive a traveler of his right of action for the results of negligence of the carrier. *Ohio, etc., R. Co.* v. *Selby*, 47 Ind. 471; *Louisville, etc., R.*

*Co.* v. *Faylor,* 126 Ind. 126; *Philadelphia, etc., R. Co.* v. *Derby,* 14 How. 468, 14 L. Ed. 502; *Jacobus* v. *St. Paul, etc., R. Co.,* 20 Minn. 125, 18 Am. Rep. 360.

It may be that the appellant should be considered not as a licensee carried gratuitously, but as a person, the compensation for whose carriage was paid by the Pullman Company when it entered into an agreement with the appellee for furnishing employes upon sleeping cars.  See *Cleveland, etc., R. Co.* v. *Ketcham,* 133 Ind. 346, 19 L. R. A. 339, 36 Am. St. 550; *Grand Trunk R. Co* v. *Stevens,* 95 U. S. 655, 24 L. Ed. 535; *Missouri, etc., R. Co.* v. *Ivy,* 71 Tex. 409, 9 S. W. 346, 1 L. R. A. 500, 10 Am. St. 758.

On the other hand, the fact that compensation has been paid by, or on behalf of, one who is being carried on a railway car does not necessarily give him a right of action, even for injuries caused by the carrier's negligence.  If his carriage is not in the performance of a duty imposed upon the carrier by law, then it will depend upon the terms of his particular contract with the railroad company whether or not there is any liability.  As said in the case of *Baltimore, etc., R. Co.* v. *Voigt,* 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, at page 505: "It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important functions of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare."

In the case of *Louisville, etc., R. Co.* v. *Keefer,* 146 Ind. 21, 38 L. R. A. 93, 58 Am. St. 348, the above rule was strictly followed.  There, an express messenger in his written contract with the American Express Company agreed to assume all risks of accidents and injuries sustained in the course of his employment, whether occasioned by the negligence of any corporation engaged in operating any

railroad, or of any employe of such corporation. The only compensation which the railway company was to receive for carrying the express messenger was that paid by the express company to it. The court held that, as railroads are not required by law to accept the traffic of independent express companies, they are not guilty of a departure from their public duty in availing themselves of a contract of exemption from liability for negligence, entered into between the express messenger and his employer, the express company. As stated by the court, page 26: "A common carrier may, however, become a private carrier or bailee for hire, where, as a matter of accommodation or special engagement he undertakes to carry something which it is not his business to carry." See the cases referred to at length in the course of the opinion.

In the case of *Pittsburgh, etc., R. Co.* v. *Mahoney,* 148 Ind. 196, 40 L. R. A. 101, 62 Am. St. 503, this court again held valid a contract exempting the railroad company from liability for its negligence resulting in the death of an express messenger carried upon its train under a special agreement with the express company. At page 200, the court say: "These authorities probably sustain the proposition stated when applied to exemption against negligence in the discharge of a public or *quasi* public duty, such as that owing by a common carrier to an ordinary shipper, passenger, or servant. In a recent decision of this court, however, that of *Louisville, etc., R. Co.* v. *Keefer,* 146 Ind. 21, we recognized the well established rule that railway companies, although public or common carriers, may contract as private carriers, such as that of transporting express matter for express companies, as such matter is usually carried, and in that capacity may properly require exemption from liability for negligence as a condition to the obligation to carry." (Citing cases.)

In the case of *Baltimore, etc., R. Co.* v. *Voigt,* 176 U. S. 498, arising under a state of facts similar to those in the

Keefer case, *supra,* the Supreme Court of the United States reversing the judgment of circuit court of appeals for the sixth circuit, and citing and approving the decisions in 146 Ind. 21, and 148 Ind. 196, held the carrier exonerated from all liability to the express messenger, because of a special contract entered into between the latter and the express company. At page 512, the court use the following language: "It is evident that, by these agreements, there was created a very different relation between Voigt and the railway company than the usual one between passengers and railroad companies. Here there was no stress brought to bear on Voigt as a passenger desiring transportation from one point to another on the railroad. His occupation of the car, specially adapted to the uses of the express company, was not in pursuance of any contract directly between him and the railroad company, but was an incident of his permanent employment by the express company. He was on the train, not by virtue of any personal contract right, but because of a contract between the companies for the exclusive use of a car. His contract to relieve the companies of any liability to him, or to each other, for injuries he might receive in the course of his employment, was deliberately entered into as a condition of securing his position as a messenger. His position does not resemble the one in consideration in the Lockwood and similar cases, where the dispensation from liability for injuries was made a condition of a transportation which the passenger had a right to demand, and which the railroad companies were under a legal duty to furnish. Doubtless, had Voigt only desired the method of transportation afforded the ordinary passenger, he would have been entitled to the rule established for the benefit of such a passenger. But this he did not desire. He was not asking to be carried from Cincinnati to St. Louis, but was occupying the express car as part of his regular employment, and as provided in a contract which, as we have seen, the railroad company was under no local compulsion to enter into."

This statement of the law is applicable to the present case. The appellant did not occupy the position of an ordinary passenger upon appellee's train. He was not being carried upon any journey from one point to another, nor was his presence incidental to the shipment of goods which the carrier was bound to accept. He occupied the sleeping car as a part of his employment with the Pullman Company. His was not a position of disadvantage with reference to the appellee, rendering it practically impossible for him to reject the terms of limited liability contained in his contract with the Pullman Company. He might have declined to enter into such an employment, and have returned to his usual occupation described in the complaint as that of a stationary engineer and electrician.

In no sense was the appellee bound to accept the appellant upon its trains, solely because he accompanied a palace car tendered by the Pullman Company, for the obvious reason that the carrier was under no legal obligation to accept and haul the sleeping car itself. Counsel for appellant urge the argument that it is customary for sleeping cars to be attached to railway trains, thus affording a great convenience to travelers, and hence the carrier is not proceeding outside of its regular business in accepting such coaches. But counsel fail to distinguish between a departure from the legitimate business of a carrier, and the doing of an act which, though within the general scope of its powers, is not imposed upon it as a duty. It would be no ground for an action of *quo warranto* against a railroad corporation that it has transported circus cars or express cars over its lines, or that a street car company has received for carriage a bag of specie. But no one would seriously contend that these acts are such as the carrier *must* perform. He *may* perform them, but if he refuse, he cannot be proceeded against as for a violation of his common law duty. If he does agree to perform them he may stipulate, specially, how far his liability for negligence shall extend. *Coup* v. *Wabash, etc., R. Co.,* 56 Mich. 111, 22 N. W. 215,

56 Am. Rep. 374; *Robertson* v. *Old Colony R. Co.,* 156 Mass. 525, 31 N. E. 650, 32 Am. St. 482; *Blank* v. *Illinois, etc., R. Co.,* 182 Ill. 332, 55 N. E. 332.

Counsel for appellant have referred us to no case holding that railroad carriers must receive sleeping cars for transportation over their lines in connection with the railroad passenger trains. The case of *Pullman, etc., Car Co.* v. *Missouri, etc., R. Co.,* 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499, assumes that no such duty rests upon the common carrier. The court say, at page 597: "It may be, as is also alleged, that it has 'become indispensable, in the conduct of the business of a railroad company, to run on passenger trains sleeping and drawing-room cars, · with the conveniences usually afforded by such cars for night travel,' but it by no means follows that the railway is, in law, obliged to arrange with the Pullman Company for such accommodations. * * * The business is always done under special written contracts. These contracts must necessarily vary, according to the special circumstances of each particular case."

But appellant contends that, inasmuch as appellee was not a party to the contract exempting transportation companies from liability for negligence, it cannot take advantage of its terms. The contract referred generally to transportation companies over whose lines the Pullman Company should run its cars. This comprehended the appellee, and, as the contract was *prima facie* for the benefit of the appellee, it will be presumed to have accepted its provisions, and it may now claim its advantages, as one in whose interest the agreement was executed. There was sufficient privity shown between the appellant and the appellee. *Ransdel* v. *Moore,* 153 Ind. 393, 405, 407.

We conclude, therefore: (1) That the appellee was under no legal duty to receive either the appellant or the car upon which he rode, since the appellant was not, and did not, purport to be a passenger, but occupied the sleeping car under a special contract between the Pullman Company

and the appellee; (2) the appellee could, under these circumstances, contract specially for a release from all liability for negligence toward appellant; (3) a contract of release made between the appellant and the Pullman Company inured to the benefit of the appellee, referred to generally therein, and its provisions can be taken advantage of by the latter in this action.

Appellant next argues that, even if a contract for exemption from liability were valid, this particular contract is void, because the word "negligence" is not used in the exonerating clause. The language employed is: "I hereby * * * release, acquit, and discharge any and all such transportation companies from all claims for liability of any nature or character whatsoever, on account of any personal injury or death to me while traveling over such lines, in said employment and service."

This provision is broad enough to include injuries resulting from the negligence of the appellee. As we have said, contracts made under the circumstances of the present case are not void as against public policy, and the same rules of construction should apply to them as to ordinary, valid stipulations. *Pittsburgh, etc., R. Co.* v. *Mahoney,* 148 Ind. 196, 203.

In the following cases, the language exempting the company from liability was not so strong as in the contract we are considering, yet it was held to include negligence by necessary implication. *Illinois, etc., R. Co.* v. *Read,* 37 Ill. 486, 87 Am. Dec. 260; *Bates* v. *Old Colony R. Co.,* 147 Mass. 255, 17 N. E. 633; *Hosmer* v. *Old Colony R. Co.,* 156 Mass. 506, 31 N. E. 652.

The cases cited by appellant, when carefully examined, are not inconsistent with this interpretation. In *New Jersey, etc., Co.* v. *Merchants Bank,* 6 How. 344, 12 L. Ed. 465, the provision for exemption was in a shipping contract. Such restrictions being against public policy, as above shown, when found in agreements for the transportation of goods, should be strictly construed.

In *Rosenfeld* v. *Peoria, etc., R. Co.,* 103 Ind. 121, 53 Am. Rep. 500, the liability exemption clause was in an abbreviated form and illegible at the time the shipper received the contract; he having neither seen nor understood the abbreviations. It was held there was no exemption from liability for negligence.

The following cases from the New York court of appeals are also relied upon by appellant as establishing the necessity for a rule of strict construction in the case at bar. *Wells* v. *Steam Nav. Co.,* 8 N. Y. 375; *Blair* v. *Erie R. Co.,* 66 N. Y. 313, 23 Am. Rep. 55; *Mynard* v. *Syracuse, etc., R. Co.,* 71 N. Y. 180, 27 Am. Rep. 28; *Holsapple* v. *Rome, etc., R. Co.,* 86 N. Y. 275; *Nicholas* v. *New York, etc., R. Co.,* 89 N. Y. 370; *Kenney* v. *New York, etc., R. Co.,* 125 N. Y. 422, 26 N. E. 626.

The law in New York has long been that contracts containing exemptions from liability for negligence are valid, though made with shippers or passengers. As a reaction against a rule which the courts of that state regard as unfortunate, and which does not prevail in Indiana, the counter doctrine has been introduced that, unless liability for negligence is expressly included, it will not be implied. As the rule does not obtain in this State, the cases involving the exception are irrelevant. See *Pittsburgh, etc., R. Co.* v. *Mahoney,* 148 Ind. 196, 200, 201.

The learned counsel for appellant cite the case of *Jones* v. *St. Louis, etc., R. Co.,* 125 Mo. 666, 28 S. W. 883, 26 L. R. A. 718, 46 Am. St. 514, which holds that a porter upon a sleeping car is a passenger, entitled to protection from the negligence of the transportation company, and that a contract of release from such liability is no bar to his recovery. It does not appear from the reported decision how the objection to the release arose, and the discussion of the proposition here involved is brief and unsatisfactory. The court assumes that the same rule applies to express messengers, and to sleeping car porters; but, as will be seen from recent

decisions in this State, such contracts as the present are valid when entered into respecting express agents. We do not regard the case as controlling in its authority and, even were it applicable to the present controversy, we are not inclined to follow it.

There being no error in the action of the lower court in overruling the separate demurrers to the second and third paragraphs of answer, the judgment is affirmed.