# ROBINSON v. BALTIMORE & OHIO RAILROAD COMPANY.

EMPLOYERS' LIABILITY ACT; CARRIERS; CONTRACT EXEMPTING FROM LIABILITY.

1. A porter on a Pullman Company car is not an employee of a railroad company which simply hauls the car, but does not control it or assume any responsibility for its management or equipment, and in case of injury while engaged in the performance of his duties, he is not entitled to maintain an action therefor against the railroad company, under the provisions of the employers' liability act of April 22d, 1908 (35 Stat. at L. 65, chap. 149, U. S. Comp. Stat. Supp. 1911, p. 1322). (Citing *Hughson* v. *Richmond & D. R. Co.* 2 App. D. C. 98.)

2. A contract of employment entered into by a Pullman Company car porter who therein exempts from liability for any injuries that may be

sustained by him, any railway company over whose lines the car on which he is employed is transported, is not in conflict with sec. 5 of the employers' liability act of April 22d, 1908 (35 Stat. at L. 65, chap. 149, U. S. Comp. Stat. Supp. 1911, p. 1322), prohibiting contracts by carriers intended to exempt from the liability created by the act.

3. An agreement entered into by a Pullman Company car porter as a condition of his employment, whereby he waives his right to maintain action against any railway company over whose lines a car in which he is employed is transported, for any injuries that may be sustained by him, is a complete bar to his right to recover against such a company, and it is immaterial that subsequent to the execution of the contract, his salary was increased, or that he was assigned the additional duty of occasionally collecting railroad tickets, where he still retained the position of porter.

No. 2474.  Submitted February 4, 1913.  Decided March 10, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This suit was brought by appellant, George R. Robinson, in the supreme court of the District of Columbia against defendant, the Baltimore & Ohio Railroad Company, to recover damages for injuries sustained by plaintiff on April 10, 1910, while engaged in the performance of his duties as a Pullman porter. At the time of the accident he was the porter in charge of a car belonging to the Pullman Company, which formed part of a train of defendant company operating in interstate commerce between Washington, District of Columbia, and Wheeling, West Virginia.  On the trial below, when the testimony on behalf of plaintiff had been given, the court, on motion of counsel for defendant, instructed the jury to return a verdict for defendant. From the judgment thereon, the case comes here on appeal.

It appears that on August 21, 1905, plaintiff made written application to the Pullman Company for employment as a Pull-

man car porter. In the following November he was taken into the service of the Pullman Comany, signing a written contract as a condition of his employment, the material provisions of which are as follows:

"Fourth. I assume all risks of accidents or casualties by railway travel or otherwise, incident to such employment and service, and hereby, for myself, my heirs, executors, administrators, or legal representatives, forever release, acquit, and discharge the Pullman Company and its officers and employees from any and all claims for liability of any nature or character whatsoever on account of any personal injury or death to me in such employment or service.

"Fifth. I am aware that said the Pullman Company secures the operation of its cars upon lines of railroad, and hence my opportunity for employment by means of contracts wherein said the Pullman Company agrees to indemnify the corporations or persons owning or controlling such lines of railroad against liability on their part to the employees of said the Pullman Company in cases provided for in such contracts, and I do hereby ratify all such contracts made or to be made by said the Pullman Company, and do agree to protect, indemnify, and hold harmless said the Pullman Company with respect to any and all sums of money it may be compelled to pay or liability it may be subject to under any such contract, in consequence of any injury or death happening to me, and this agreement may be assigned to any such corporation or person, and used in its defense.

"Sixth. I will obey all rules and regulations made or to be made for the government of their own employees by the corporations or persons over whose lines of railroad the cars of said the Pullman Company may be operated while I am traveling over said lines in the employment or service of said the Pullman Company; and I expressly declare that while so traveling I shall not have the rights of a passenger with respect to such corporations or persons, which rights I do expressly renounce; and I hereby, for myself, my heirs, executors, administrators, or legal representatives, forever release, acquit, and discharge

any and all such corporations and persons from all claims for liability of any nature or character whatsoever on account of any personal injury or death to me while in said employment or service."

*Mr. Alexander Wolf* and *Mr. Levi H. David,* for the appellant:

1. Appellant was an employee of the defendant company, either as a matter of law or fact, within the true meaning and interpretation of the employers' liability act of April 22, 1908 (35 Stat. at L. 65, chap. 149), as amended by the act of April 5, 1910 (36 Stat. at L. chap. 143). This act is constitutional *Second Employers' Liability Cases,* 223 U. S. 1, 59; *Philadelphia B. & W. R. R. Co.* v. *Schubert,* 224 U. S. 603, affirming same case in 36 App. D. C. 565; *Hawaii* v. *Mankichi,* 190 U. S. 197, 249; *Watson* v. *St. Louis, I. M. & S. R. Co.* 169 Fed. 942; *Johnson* v. *Southern P. R. Co.* 196 U. S. 1, 17; *Philadelphia, B. & W. R. Co.* v. *Tucker,* 35 App. Cas. 148; *El Pasco & N. E. R. Co.* v. *Gutierrez,* 215 U. S. 87; *McNamara* v. *Washington Terminal Co.* 37 App. Cas. 393; *Mobile, etc. R. Co.* v. *Turnipseed,* 219 U. S. 35; *Chicago, etc. R. Co.* v. *United States,* 219 U. S. 486, 497; *Atkyn* v. *Wabash R. Co.* 41 Fed. 193.

2. Appellant not only performed the duties of an ordinary porter for the benefit of the railroad company, but collected railroad transportation from the passengers of the railroad, under the direction and control of the train conductor, the vice principal of the railroad company. *Chicago, M. & St. P. R. Co.* v. *Ross,* 112 U. S. 377; *Northern P. R. Co.* v. *Peterson,* 162 U. S. 354; *Baltimore & O. S. W. R. Co.* v. *Voigt,* 176 U. S. 498, 521; *O'Brien* v. *Chicago & N. W. R. Co.* 116 Fed. 502; *Chicago & N. W. R. Co.* v. *O'Brien,* 67 C. C. A. 421, 426, 132 Fed. 593; see *Chicago & N. W. R. Co.* v. *O'Brien,* 82 C. C. A. 461, 464, 153 Fed. Rep. 511; *Pennsylvania Co.* v. *Roy,* 102 U. S. 451; *Missouri, K. & T. R. Co.* v. *Reasor,* 28 Tex. Civ. App. 302; *Vary* v. *The B. C. R. & M. R. Co.* 42

Iowa, 246, 249; *Hannegan* v. *Union Warehouse Co.* 38 N. Y. Supp. 272–3; *Tennessee Coal, Iron, & R. Co.* v. *Hayes*. 97 Ala. 201; *Oliver* v. *Northern P. R. Co.* 196 Fed. 432.

*Mr. George E. Hamilton, Mr. John J. Hamilton,* and *Mr. John W. Yerkes,* for the appellee:

1. The plaintiff Robinson, at the time of the injury, was not, as a matter of law or fact, an employee of the railroad company, and therefore none of the provisions of the employers' liability act of April 22, 1908, can be invoked and enforced in his behalf. *Baltimore & O. S. W. R. Co.* v. *Voigt,* 176 U. S. 498; *McDermon* v. *Southern P. Co.* 122 Fed. 669; *Hughson* v. *Richmond & D. R. R. Co.* 2 App. D. C. 98; *Chicago, etc. R. Co.* v. *Hambler,* 215 Ill. 525; *Russell* v. *Pittsburg, etc. R. R. Co.* 61 N. E. 678; *Chicago, etc. R. Co.* v. *O'Brien,* 132 Fed. 593; *Denver, etc. R. Co.* v. *Whan* (Colo.) 11 L.R.A.(N.S.) 432; *New York, etc. R. Co.* v. *Difendaffer,* 125 Fed. 893; *Oliver* v. *Northern P. R. Co.* 196 Fed. 432.

2. That plaintiff, as pullman porter, occasionally accepted from a passenger entering the train and sleeper after midnight both his pullman and train tickets, does not, constitute him an employee of the defendant railroad company. *Chicago, M. & St. P. R. Co.* v. *Ross,* 112 U. S. 377; *Northern P. R. Co.* v. *Peterson,* 162 U. S. 354; *Baltimore & O. R. Co.* v. *Baugh,* 149 U. S. 368; *New England R. Co.* v. *Conroy,* 175 U. S. 323.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This appeal turns upon two questions:

First: Was plaintiff at the time of the injury an employee of defendant railroad company, and, as such, entitled to maintain his action under the provisions of the employers' liability act of April 22, 1908 (35 Stat. at L. 65, chap. 149, U. S. Comp. Stat. Supp. 1911, p. 1322)?

Second: Does the contract of employment between plaintiff and the Pullman Company constitute a bar to recovery against the railroad company?

Section 1 of the act of 1908 provides: "That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States and Territories, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." It is unnecessary to enter into a discussion of the rules of construction applicable to this act. While it is in derogation of the common law, it should be construed so as to give effect to the evident intent of Congress. *Johnson* v. *Southern P. Co.* 196 U. S. 1, 49 L. ed. 363, 25 Sup. Ct. Rep. 158, 17 Am. Neg. Cas. 412. It applies broadly to any employee of a railroad company injured while engaged in interstate commerce. Of course, if plaintiff was in the employ of defendant at the time of the accident, he would be entitled to maintain his action under sec. 5 of the act of 1908, irrespective of the contract of employment. Hence, the case turns solely upon the nature of plaintiff's employment.

The contract between the Pullman Company and the Baltimore & Ohio Railroad Company, whereby the latter company agreed to operate parlor and sleeping cars, was substantially a contract on the part of the railroad company to haul the cars of the Pullman Company. The material stipulations of the agreement were that the Pullman Company should "furnish sleeping and parlor cars properly equipped and acceptable to the railroad company, sufficient * * * to meet the requirements of travel over" the railroad company's lines; that the Pullman Company should keep its cars in good order and repair; that it should "have the right to collect from the occupants of Pullman cars, for the use of seats and berths therein, such fares as are customary on competing lines of railroad," and that the Pullman Company should "furnish

agents or inspectors to supervise the conduct of employees, cleanliness of cars, etc., while *en route,* and the railroad company will transport free over its own lines the employees, agents, or inspectors" of the Pullman Company. The railroad company agreed that its ticket agents at such offices as should be agreed upon should "sell tickets for seats and berths in such cars without charge to the Pullman Company;" that "the railroad company shall haul the cars furnished by the Pullman Company under this agreement on its passenger trains in such manner as may be necessary to meet the requirements of travel," and "shall not be entitled to receive compensation from the Pullman Company for the movement of cars furnished under this agreement."

The Pullman Company employed plaintiff in the capacity of porter, and he was acting as such in one of the company's cars at the time he was injured. The car was not operated nor controlled by defendant. Defendant, under its agreement with the Pullman Company, was simply hauling the car. True, it was hauled for the accommodation of the passengers traveling upon defendant's train. But the railroad company assumed no responsibility for the management of the car or its equipment. The Pullman Company sold passengers the tickets which entitled them to the privileges of its car. The proceeds went to the Pullman Company. Its conductor and porter looked after the accommodation of the passengers while in and about the car. In fact, so far as the control of the car was concerned, it was as complete as if the entire train had been operated by the Pullman Company. The railroad company in its contract with its passengers did nothing that limited the Pullman Company's control of its cars. The duty which the railroad company assumed to carry its passengers safely, whether in its cars or in the cars of the Pullman Company, arose from its contract in the sale of tickets entitling them to transportation, and not from their purchase from the Pullman Company of tickets entitling them to the additional privilege of riding in its cars.

Plaintiff insists that at the time of the accident he stood in the relation of an employee of defendant company, and bases

his contention chiefly upon a suggestion in the decision in the case of *Baltimore & O. S. W. R. Co.* v. *Voigt,* 176 U. S. 498, 44 L. ed. 560, 20 Sup. Ct. Rep. 385. In that case, an express messenger had been injured through the alleged negligence of the railroad company. As a condition of his employment by the express company, he had executed a release exempting the railroad company from liability for injuries he might sustain as an express messenger on the railroad. The release was held to constitute a bar to recovery against the railroad company. Importance is attached, however, to the following statement of the court: "The relation of an express messenger to the transportation company in cases like the present one seems to us to more nearly resemble that of an employee than that of a passenger. His position is one created by an agreement between the express company and the railroad company, adjusting the terms of a joint business,—the transportation and delivery of express matter. His duties of personal control and custody of the goods and packages, if not performed by an express messenger, would have to be performed by one in the immediate service of the railroad company. And, of course, if his position was that of a common employee of both companies, he could not recover for injuries caused, as would appear to have been the present case, by the negligence of fellow servants."

It will be observed that the court did not say that the express messenger was an employee of the railroad company. In distinguishing his position from a passenger, it said it seemed to "more nearly resemble that of an employee than that of a passenger." The same distinction was made as to a Pullman porter by this court in *Hughson* v. *Richmond & D. R. Co.* 2 App. D. C. 98, where it was held that a Pullman porter was not an employee of the railroad company. The court, speaking through Chief Justice Alvey, said: "But though the plaintiff was not a servant of the railroad company, and therefore not a coservant with the employees of that company, and consequently not subject to the principle of nonliability of the master for the negligence of his servant producing an injury

to a fellow servant, yet the plaintiff was not a passenger in any such sense as to require of the railroad company the highest degree of skill and care in the construction and maintenance of its roadway and machinery, and the operation of its road and the running of its trains, such as are required in the case of a passenger."

In their relation to the railroad company, we think there is a marked distinction between an express messenger and a Pullman porter. As was suggested in the *Voigt·Case,* the express messenger occupied a position created by agreement between the express company and the railroad company. He performed duties which, if not performed by.him, would have to be performed by the railroad employees. Express matter, when received by the railroad company under its contract with the express company, like freight, has to be handled and cared for. If not looked after by the agents of the express company, the duty would devolve upon the employees of the railroad company. Not so with a Pullman car. It is a vehicle of a common carrier independent of the railroad company. The mere fact that the Pullman Company employs the railroad company to haul its cars does not affect its relation to the public. The railroad company is not under obligation to haul Pullman cars, as it is at common law to carry passengers and freight. *Russell* v. *Pittsburgh, C. C. & St. L. R. Co.* 157 Ind. 305, 55 L.R.A. 253, 87 Am. St. Rep. 214, 61 N. E. 678. Passengers occupy Pullman cars under contract with the Pullman Company, and not the railroad company. The service rendered by the porter forms no part of the contractual duty of the railroad company to its passengers. "It is no part of the contract or obligation of a common carrier of passengers to furnish berths, or the services of a porter to make up beds or perform other services for passengers. The passenger pays the Pullman Company for the services performed by it, and not the railroad company, and if one desires such services as are rendered by the Pullman Company and its porter, he must contract with that company for them." *Chicago, R. I. & P. R. Co.* v. *Hamler,* 215 Ill. 525, 1 L.R.A.(N.S.) 674, 106 Am. St. Rep. 187, 74 N. E. 705,

1 Ann. Cas. 42. On the other hand, the porter performs no service connected with the operation of the train by the railroad company. In fact, when a passenger purchases a berth in a Pullman car, he must look entirely to the Pullman Company for the services of a porter. In 12 Am. & Eng. Enc. Law, 2d ed. 994, the rule is laid down that, "where a palace car is run as part of a train under a contract between the palace car company and the railroad company, the employees of the two companies are not, it has been held, fellow servants," citing *Hughson* v. *Richmond & D. R. Co. supra.* This rule has been followed in *McDermon* v. *Southern P. R. Co.* 122 Fed. 669; *Russell* v. *Pittsburgh, C. C. & St. L. R. Co.* and *Chicago, R. I. & P. R. Co.* v. *Hamler, supra; Denver & R. G. R. Co.* v. *Whan,* 39 Colo. 230, 11 L.R.A.(N.S.) 432, 89 Pac. 39, 12 Ann. Cas. 732.

Counsel for plaintiff place strong reliance upon the decision in the case of *Oliver* v. *Northern P. R. Co.* 196 Fed. 432. In that case the railroad company and the Pullman Company were the joint owners of the Pullman car in which Oliver, the porter, was killed. The car was owned by the two companies under a contract which, among other things, provided: "The cars owned jointly by the railroad company and the Pullman Company shall be known as "association" cars, the Pullman Company having the management thereof; and all obligation of the Pullman Company with respect to the operation of said cars shall be assumed and borne by the association. * * * The association shall furnish with each of such sleeping cars one or more employees, as may be required, whose duties shall be to collect fares from passengers occupying such cars, and for the use of seats or berths, and generally to wait upon and provide for the comfort of passengers therein; such employees at all times to be subject to the rules of the railroad company governing its own employees. The association shall also furnish employees who shall have charge of all sleeping cars used under this contract." Distinguishing that case from the cases of the class to which the one at bar belongs, the court said: "The relations existing between the railway company and the Pullman Company

in this case, and consequently the relations existing between the railway company and the porter on the Pullman car, differ widely from those disclosed in the numerous cases cited in argument, where it was held that a porter on a Pullman car was not an employee of the railroad company over whose tracks the Pullman car was operated." After discussing the contract by which the association consisting of the Pullman Company. and the railway company had been formed, the court further said: "It will thus be seen that the railway company was the owner of a half interest of the Pullman car upon which the deceased porter was employed, and that the deceased was employed by an association of which the railway company was a part. True, the Pullman Company was the manager for the association, but in that respect it was simply an agent for the railway company. Stripped of matters of mere form, the railway company and the Pullman Company operated this car jointly for their joint benefit, and employed the porter jointly." It thus appears that there is no such analogy between the two cases as will afford any relief to plaintiff.

This brings us to the contract of employment. It is not in conflict with sec. 5 of the act of 1908, which provides: "That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void." This provision must be construed in relation to the act, which relates alone to railroad employees engaged in interstate commerce. Plaintiff, not occupying that relation to defendant, cannot avail himself of it to defeat his contract of employment. Stripped therefore of all connection with the act of 1908, the contract of employment furnishes a complete bar to plaintiff's right to recover in this action. *Baltimore & O. S. W. R. Co.* v. *Voigt, supra.*

There is no importance to be attached to the mere fact that, after the execution of the contract of employment, plaintiff's salary was increased, and he was assigned the additional duty of occasionally collecting railroad tickets. This did not relieve him from the obligations of his contract. It did not affect his

waiver of right to maintain this action against defendant company. He was originally employed as a Pullman porter, and at the time of the alleged accident still retained that position.

The other errors assigned are of no importance, and will not be considered. The judgment is affirmed with costs.

*Affirmed.*

The Supreme Court of the United States granted an application for a writ of error April 30, 1913.