McDERMON v. SOUTHERN PAC. CO.

(Circuit Court, W. D. Missouri, W. D. May 18, 1903.)

No. 2,742.

1. RAILROADS—PULLMAN CAR PORTER—INJURY—PREVIOUS CONTRACT RELEASING RAILROAD COMPANY—VALIDITY.

A contract made by a Pullman car porter on securing employment, whereby he releases the company from liability for his negligent injury, ratifies contracts made by it with railroad companies carrying its cars for indemnifying the latter for injuries to Pullman employés, covenants to indemnify the Pullman Company on such account, agrees that the contract may be assigned to a carrying company for purposes of defense, and releases carrying companies from such liability, does not contravene public policy, and is valid; the porter not being a passenger of the carrying companies.

2. SAME—STATE STATUTE—CONSTRUCTION.

Rev. St. Mo. 1899, § 2876, providing that no contract made between "any railroad corporation" and any of its "agents or servants," based on the contingency of his injury or death, and limiting the liability of such railroad corporation for damages "under the provisions of this act" (abolish-

.ing the fellow-servant rule), shall be valid, has no application to a contract made by a Pullman car porter with the company, whereby he releases it from liability for negligent injury, agrees to indemnify it for any liability incurred on such account to a railroad company carrying its cars under contract of indemnity for negligent injury to Pullman employés, agrees that the contract may be assigned to such carrying company for purposes of defense, and also releases the carrying company; section 4160 requiring that in statutory construction words shall be taken in their usual sense, and technical words according to their technical import, unless such construction be plainly repugnant to the context or legislative intent.

8. SAME.

The statute is specially inapplicable where the carrying company is neither a Missouri corporation nor operating within that state, and the accident for which it is sued occurred in California; Rev. St. Mo. 1899, § 1163, providing that the term "railroad corporation" shall be taken to mean corporations, etc., owning and operating "railroads in this state."

L. A. Laughlin and O. F. Wayland, for plaintiff.
Lathrop, Morrow, Fox & Moore, for defendant.

PHILIPS, District Judge. The plaintiff, a porter in the employ of the Pullman Palace Car Company, a corporation engaged in running sleeping cars over the defendant railroad pursuant to a contract between it and the defendant, sues the defendant company for damages resulting from personal injuries received while in the line of his duty as a porter in one of the sleeping cars of the Pullman Company in the state of California by reason of the alleged negligence of the defendant company in running one of its freight trains onto a siding so as to run into said sleeping car. The answer, inter alia, pleads that a written contract was in force at the time between the defendant and the Pullman Company by which the Pullman Company agreed to furnish sleeping cars for the transportation of passengers over the defendant's road; that the Pullman Company was thereby entitled to and did collect revenue from all passengers using its said cars, and that the car so furnished by the Pullman Company on which the accident occurred was furnished by it under said contract; that in accordance with the provisions of said contract the Pullman Company furnished one or more employés upon said sleeping car, who were carried by the Pullman Company free of charge; that it was further stipulated in said contract that, in the event of any liability arising against the defendant for personal injury, by death or otherwise, of any of the employés of the Pullman Company so being carried under the provisions of said contract, the defendant should be indemnified for said liability by the Pullman Company, and the same should be paid by the Pullman Company; that the plaintiff had neither paid nor agreed to pay any fare for his passage; and that prior to the injury complained of the plaintiff entered into an agreement in writing with the Pullman Company, which was in full force and effect at the time of the injury, by which the plaintiff expressly, for the considerations in said contract named, including his employment and stipulated wages, agreed as follows:

"I assume all risks of accidents or casualties by railway travel or otherwise, incident to such employment and service, and hereby for myself, my heirs, executors, administrators, or legal representatives, forever release, acquit, and discharge the Pullman Company and its officers and employés

from any. and all claims for liability of any nature or character whatsoever on account of any personal injury or death to me in such employment or service."

And also as follows:

"I am aware that said the Pullman Company secures the operation of its cars upon lines of railroad, and hence my opportunity for employment by means of contracts wherein said the Pullman Company agrees to indemnify the corporations or persons owning · or controlling such lines of railroad against liability on their part to the employés of said the Pullman Company in cases provided for in such contracts, and I do hereby ratify all such contracts made or to be made by said the Pullman Company, and do agree to protect, indemnify, and hold harmless said the Pullman Company with respect to any and all sums of money it may be compelled to pay or liability it may be subject to under any such contract in consequence of any injury or death happening to me; and this agreement may be assigned to any such corporation or person, and used in its defense."

And also as follows:

"I will obey all rules and regulations made or to be made for the government of their own employés by the corporations or persons over whose lines of railroad the cars of said the Pullman Company may be operated while I am traveling over said lines in the employment or service of said the Pullman Company, and I expressly declare that while so traveling I shall not have the rights of a passenger with respect to such corporations or persons, which rights I do expressly renounce, and I hereby for myself, my heirs, executors, administrators, or legal representatives, forever release, acquit, and discharge any and all such corporations and persons from all claims for liability of any nature or character whatsoever on account of any personal injury or death to me while traveling over such lines in said employment or service."

The plaintiff moves to strike out the foregoing plea as constituting no defense to the plaintiff's cause of action.

It has been expressly held by the Supreme Court of the United States in Baltimore & Ohio, etc., Ry. Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, that in the case of an express messenger, under a similar contract with an express company, such messenger could not maintain an action against the railroad company hauling the express car in which the messenger was being carried. Mr. Justice Shiras, who wrote the opinion, bases it upon the broad principle: That "the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare." That the railroad company is under no public or legal obligation to carry express cars, and its doing so is a mere matter of convention between the transportation company and the express company. That this implies a special understanding as to the conditions on which the express car is to be occupied, and the particular trains that may be used, and the price to be paid, "and all the varying details of a business which is to be adjusted between two public servants, so that each can perform in the best manner its own particular duties," all of which is a matter of bargain; that by such agreements between the two companies "there was created a very different relation between Voight and the railway company than the usual one between passengers and railroad companies. Here there

was no stress brought to bear on Voight as a passenger desiring transportation from one point to another on the railroad. His occupation of the car * * * was not in pursuance of any contract directly between him and the railroad company, but was an incident of his permanent employment by the express company. He was on the train not by virtue of any personal contract right, but because of a contract between the companies for the exclusive use of a car. His contract to relieve the companies from any liability to him, or to each other, for injuries he might receive in the course of his employment, was deliberately entered into as a condition of securing his position as a messenger." That his relation to the company was wholly different from that of a passenger. It is also distinguishable from that of a postal clerk on the cars, because "the messenger has agreed to the contract between the express and the railroad companies, exempting the latter from liability; but no case is cited in which the postal clerk voluntarily entered into such an agreement. To make the cases analogous, it should be made to appear that the government, in contracting with the railroad company to carry the mails, stipulated that the railroad company should be exempted from liability to the postal clerk, and that the latter, in consideration of securing his position, had concurred in releasing the railroad company"; and it is also distinguishable from that class of cases where the express messenger pleaded that he was entirely ignorant of any such contract relations between the express and railroad companies. The doctrine of this case has been recognized by other courts of high authority. Bates v. Old Colony R. Co., 147 Mass. 255, 17 N. E. 633; Hosmer v. Old Colony R. Co. (Mass.) 31 N. E. 652; Pittsburgh, etc., Railway v. Mahony (Ind. Sup.) 46 N. E. 917, 40 L. R. A. 101, 62 Am. St. Rep. 503; Louisville, etc., Railway Co. v. Keefer, 146 Ind. 21, 44 N. E. 796, 38 L. R. A. 93, 58 Am. St. Rep. 348; Blank v. Illinois, etc., R. Co., 182 Ill. 332, 55 N. E. 332.

This principle has also been applied to the instance where the railroad company makes a special contract with the proprietors of a circus to haul their cars. Robertson v. Old Colony R. Co., 156 Mass. 526, 31 N. E. 650, 32 Am. St. Rep. 482. It has also been expressly applied to the instance of a porter on a Pullman car under a similar contract to the one in question. Russell v. Pittsburgh, etc., Ry. Co., 157 Ind. 305, 61 N. E. 678, 55 L. R. A. 253, 87 Am. St. Rep. 214. The argument of the learned judge who delivered the opinion of the court is contained in the following excerpt:

"If his carriage is not in the performance of a duty imposed upon the carrier by law, then it will depend upon the terms of his particular contract with the railroad company whether or not there is any liability. * * * The appellant did not occupy the position of an ordinary passenger upon the appellee's train. He was not being carried upon any journey from one point to another, nor was his presence incidental to the shipment of goods which the carrier was bound to accept. He occupied the sleeping car as a part of his employment with the Pullman Company. His was not a position of disadvantage with reference to the appellee, rendering it practically impossible for him to reject the terms of limited liability contained in his contract with the Pullman Company. He might have declined to enter into such an employment, and returned to his usual occupation, described in the complaint as that of a stationary engineer and electrician. In no sense was the appellee bound

to accept the appellant upon its trains solely because he occupied a palace car tendered by the Pullman Company, for the obvious reason that the carrier was under no legal obligation to accept and haul the sleeping car itself. Counsel for appellant urge the argument that it is customary for sleeping cars to be attached to railway trains, thus affording a great convenience to travelers, and hence the carrier is not proceeding outside of its regular business in accepting such coaches. But counsel failed to distinguish between a departure from the legitimate business of a carrier and the doing of the act which, though within the general scope of its powers, is not imposed upon it as a duty. It would be no ground for an action of quo warranto against a railroad corporation that it has transported circus cars or express cars over its lines, or that a street car company has received for carriage a bag of specie. But no one would seriously contend that these acts are such as the carrier must perform. He may perform them, but, if he refuses, he cannot be proceeded against as for a violation of his common-law duty. If he does agree to perform them, he may stipulate specially how far his liability for negligence shall extend. * * * We conclude, therefore: First, that the appellee was under no legal duty to receive either the appellant or the car upon which he rode, since the appellant was not, and did not purport to be, a passenger, but occupied the sleeping car under a special contract between the Pullman Company and the appellee; second, the appellee could, under these circumstances, contract specially for a release from all liability for negligence towards appellant; third, a contract of release made between the appellant and the Pullman Company inured to the benefit of the appellee, referred to generally therein, and its provisions can be taken advantage of by the latter in this action."

In Donovan et al. v. Pennsylvania Company, 120 Fed. 215, the Circuit Court of Appeals for the Seventh Circuit, through Baker, J., said:

"A railroad company is not a common carrier of common carriers of passengers. It owes no duty to sleeping car companies to haul their cars and clerks and porters, and may, therefore, exempt itself from liability for negligence."

I am unable to perceive any difference in principle between the porter on a car of the Pullman Company and that of a messenger in an express car. The porter is hired and paid by the Pullman Company. He is subject to its orders, and alone under its control. Such positions are much sought after by such persons as the plaintiff, and in consideration of such favorable position they are more than willing to accept the conditions of their employment imposed upon this plaintiff; and I can perceive no interest of public policy that should prevent him from obtaining such position on his voluntary acceptance of the conditions imposed by his employer.

This being the state of the common law, it should be followed by this court, unless the contention of plaintiff's counsel is maintainable that by the statute of this state the contract in question is declared to be contrary to the public policy of the state. This contention is based upon section 2876 of the Revised Statutes of Missouri, 1899, which is as follows:

"No contract made between any railroad corporation and any of its agents or servants, based upon the contingency of the injury or death of any agent or servant, limiting the liability of such railroad corporation for any damages under the provisions of this act, shall be valid or binding, but all such contracts or agreements shall be null and void."

This statute was first enacted in 1897 (Laws Mo. 1897, pp. 96–97) in connection with the enactment, for the first time in this state, of

what is known as the "Fellow-Servant Law." The strong opposition to this legislation in the state which postponed its enactment to so late a date, after such legislation had obtained in other states, would indicate that the foregoing phraseology employed in the statute was carefully considered, and that it was not intended by the Legislature to extend its application one step beyond the natural import of the words employed. By express provision of the state statute (section 4160, Rev. St. Mo. 1899) it is declared that in the construction of all statutes of this state, unless such construction be plainly repugnant to the intention of the Legislature or the context of the same statute, "words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." Accordingly, it has been repeatedly said by the Supreme Court of this state that it will always be intended that the lawmaking power uses words in their usual and proper signification, hence courts will not deviate from the common usage of the words, unless it is made clearly to appear that they were intended in a different sense, or there be good and substantial reasons for affixing a different meaning to them; that the intention of the Legislature must be ascertained from the words of the statute, and not from any general inferences to be drawn from the nature of the objects dealt with by the statute. See State ex rel. v. Thompson, 36 Mo. 70; State v. Hayes, 78 Mo. 605. As said by Judge Henry in State ex rel. v. Gammon, 73 Mo. 426:

"Resort may be had to the intention of the Legislature, when it can be ascertained, in the construction of an act whose phraseology is ambiguous; but when the language of the act clearly expresses a specific purpose in conflict with the alleged general intent, it would be an exercise of legislative power by the courts to give effect to such general intent against the express provision of the act. What would be the limit of such authority if claimed by the courts? Can they go outside the language of the act to ascertain that the Legislature meant one thing when it declared another, and give the act a construction in harmony with such ascertained intent? The proposition furnishes its own refutation."

In Shaw v. Railroad Company, 101 U. S. 565, 25 L. Ed. 892, Mr. Justice Strong declares that "no statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." The state statute in question applies by its express terms alone to a "contract made between any railroad corporation and any of its agents or servants." The terms "agent" and "servant" of a railroad company have such a well-defined meaning in ordinary as well as legal acceptation as to admit of no cavil or debate. It is not any corporation, but a railroad corporation named by the statute, and it is its agents and servants alone with whom it may not make such contracts. In other words, it is restricted to the instance where the relation of master and servant exists between the railroad corporation and the other party. The plaintiff, as already stated, was neither hired nor paid by the defendant company. It exercised no control over him, nor could it discharge him. The relation of master and servant existed alone between the Pullman Company

and the plaintiff. He had entered the service of the latter company, and subscribed alone to its rules and regulations. He took orders and received his compensation from, and could be discharged alone by, that company. How, then, can it be said that the contract in question was between the railroad company and this plaintiff as its agent or servant?

The tendency on the part of some courts in later times to extend and broaden the plain, simple, apt words of innovating statutes by searching after what is termed the "legislative policy" of the state, is the worst form of judicial legislation. It has come to pass too frequently that, where kindred legislation to this under consideration happens to be in accord with the inclination of the mind of the particular judge, he begins to search out for what he conceives to be the legislative policy, and, having to his own satisfaction discovered the hidden mind of the Legislature, under the guise of effectuating the legislative intent, he stretches the words of the given statute so as to enlarge its compass far beyond the ordinary meaning of the terms employed by the lawmaker. He thus reads into the statute his own ideas of what the public policy ought to be, rather than what the Legislature has declared.

Mr. Justice Peckham, now of the Supreme Court, when on the Court of Appeals of New York, in Fitzgerald v. Quann, 109 N. Y. 441, 17 N. E. 354, said:

"Counsel for the defendant, in his argument before us, concedes the rule to be well established, and almost universally acted on, that statutes changing the common law must be strictly construed, and that the common law must be held no farther abrogated than the clear import of the language used in the statute absolutely requires. However much modern judges might sometimes be inclined to doubt the beneficial results to be derived from an always strict adherence to the rule, grounded upon some possible doubts of the high order of excellence in all cases of the common law, or of its being without exception the perfection of human reasoning in any other than a very narrow, technical, and one-sided way, yet the rule itself is too securely and firmly established and grounded in our jurisprudence to be altered other than by legislative interference."

Mr. Justice Harlan, in Bate Refrigerating Company v. Sulzberger, 157 U. S. 36, 15 Sup. Ct. 516, 39 L. Ed. 601, speaking to this question, said:

"In our judgment the language used is so plain and unambiguous that a refusal to recognize its natural, obvious meaning would be justly regarded as indicating a purpose to change the law by judicial action based upon some supposed policy of Congress. But, as declared in Hadden v. Collector, 5 Wall. 107, 111 [18 L. Ed. 518]: 'What is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes.' 'Where the language of the act is explicit,' this court has said, 'there is great danger in departing from the words used to give an effect to the law which may be supposed to have been designed by the Legislature. * * * It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases because no good reason can be assigned why they were excluded from its provisions.' Scott v. Reid, 10 Pet. 524, 527 [9 L. Ed. 519]."

· · And quite pertinently further on he observed:

"If the statute thus construed does not give to the inventor all the benefits he would like to have, the remedy is with another department of the government, and it is not for the courts to tamper with the words of a statute, or by a strained construction of legislative enactments, the language of which is clear and explicit, to accomplish results not contemplated by Congress. This court, speaking by Chief Justice Marshall, in United States v. Fisher, 2 Cranch, 358, 385 [2 L. Ed. 304], said that where the meaning of the Legis- lature is plain 'it must be obeyed.'"

Further contention is made, based upon the following observation, arguendo, made by Mr. Justice Shiras in Baltimore & Ohio, etc., Railway Company v. Voight, supra:

"The relation of an express messenger to the transportation company, in cases like the present one, seems to us to more nearly resemble that of an employé than that of a passenger. His position is one created by an agreement between the express company and the railroad company, adjusting the terms of a joint business—the transportation and delivery of express matter. His duties of personal control and custody of the goods and packages, if not performed by an express messenger, would have to be performed by one in the immediate service of the railroad company. And, of course, if his position was that of a common employé of both companies, he could not recover for injuries caused, as would appear to have been the present case, by the negligence of fellow servants."

From this it is sought to maintain that the porter on a Pullman car is a quasi employé of the railroad corporation. The court did not assert that the express messenger was an employé of the carrier corporation, but that he "more nearly resembles that of an employé than that of a passenger"; and that his duties of personal control and custody of the express matter, if not performed by the express messenger, would have to be performed by a servant of the railroad company. It is evident that the learned justice presented this thought argumentatively, so that, if it were asserted that such messenger was an employé of a fellow servant, there could be no recovery.

"Beware of analogies," is a maxim as wholesome in law as in polemics. The illustration, it seems to me, must fail in the instance of a Pullman porter. It cannot even plausibly be maintained that, if the Pullman Company should fail to provide a porter to take care of the berths, "shine shoes," and brush all the lint off the clothes of passengers while waiting for his "tip," the railroad company would be under obligation to furnish such service. This is what the passenger pays the Pullman Company for, and for which service he must look alone to it. It is no part of the contract obligation or undertaking of the carrier in selling a ticket to a passenger that this service, or anything like it, shall be rendered to him. If the passenger sees fit to go into the Pullman car and pay for a berth, he must look alone to the Pullman Company for the service of a porter. It is laid down in the text in 12th Am. & Eng. Enc. of Law (2d Ed.) p. 994, that "where a palace car is run as part of a train under a contract between the palace car company and the railroad company, the employés of the two companies are not, it has been held, fellow servants." See Hughson v. Richmond, etc., R. Co., 2 App. Cas. (D. C.) 98. It is on this principle that it is held in Mellor v. Missouri, etc., Ry. Co., 105 Mo. 455, 16 S. W. 849, 10 L. R. A. 36, that a mail agent is not a fellow servant of the rail-

road employés.   See, also, Pennsylvania Railroad Co. v. Price (Pa.) ɪ Am. & Eng. Ry. Cas. 234.

Plaintiff's counsel cites the case of O'Brien v. Chicago & N. W. Ry. Company (C. C.) 116 Fed. 502, in support of the contention that the state statute in question precludes the defense here interposed.   It is deemed ,a sufficient answer to this contention to say that the Iowa statute applied by Judge Shiras is quite dissimilar in important particulars to the Missouri statute.   It makes every corporation operating a railway liable for all damages sustained by any person, including employés of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employés thereof, and in consequence of the willful wrongs, etc., when such wrongs are in any manner connected with the use and operation of any railway on or "about which they shall be employed, and no contract which restricts such liability shall be legal or binding."   The second section of the act expressly declares that no contract, receipt, rule, or regulation shall exempt any railway corporation engaged in transporting persons or property from the liability of a common carrier or carrier of passengers which would exist had no contract, receipt, rule, or regulation been made or entered into.   [Code Iowa, § 2074.]   From which it is obvious that the Iowa statute applies to damages sustained by any person, whether an employé or not, and the contract is not, as in the Missouri statute, limited to that between railway corporations and their agents or servants.   And to put the matter beyond debate, the Legislature of Iowa, in its amendment to the foregoing statute, expressly extends its operation to any contract of insurance, relief, benefit, or indemnity in case of injury, etc., between the person so injured and such corporation, or any other person or association acting for such corporation.   [Acts 27th Gen. Assem. p. 33, c. 49.]   The Legislature of Iowa has not left its public policy in this matter in doubt, or subject to judicial enlargement.   It has employed terms so comprehensive and direct as to cover the instance of a contract between a railroad company and any other association.

The case of Mexican National Railway v. Jackson (C. C. A.) 118 Fed. 549, cannot control the case at bar.   The language of the Texas statute, relied upon by the majority of the court, is much broader than the Missouri statute in question.   That statute declares that "no contract made between the employer and the employé, based upon the contingency of death or injury of the employé, and limiting the liability of the employer under this act, or fixing damages to be recovered, shall be valid or binding."   By the terms of this statute it applies to a contract between any employer and the employé, and is not limited, as is the Missouri statute, to a contract between a railroad corporation and its agent or servant.   The discussion by the learned judge in that case of the public policy of the state is mere dictum.   The only question raised on the appeal by the assignment of errors was, first, that the statute referred to violates a provision of the state constitution because its caption contained more than one subject; and, second, because the act referred to is class legislation, applying only to one class of persons, fixing limitations upon persons, receivers, or corporations operating railroads or street railways not imposed upon

other persons. As those were the only questions raised on the assignment of errors, they were the only matters involved in the decision to make it authoritative. So at the conclusion of the court's opinion it is said: "We consider that the case before us presents only the question, is the statute of Texas a valid law? We hold that it is, and that the plea in bar has no support." As Judge Pardee dissented, it is not improbable that it was based on the fact that part of the discussion by Judge McCormick was outside of the questions raised by the assignment of errors.

It is to be noticed that in the state of Ohio, where the Voight Case originated (87 Ohio Laws, p. 149), it is provided that it is unlawful for any railroad company to require of any of its employés to agree in advance to hold the corporation blameless for any injury sustained for which otherwise he might recover damages from the company. 2 Bailey, Pers. Inj. 772. And that in the state of Indiana, where the case of Russell v. Pittsburgh, etc., R. Co., supra, was decided, the statute of that state provides that "all contracts made by a railroad or other corporation with their employés, or rules or regulations adopted by any corporation, releasing it or relieving it from liability to any employé having a right of action under the provisions of this act are hereby declared null and void." Burns' Rev. St. 1901, § 7087.

The fact that neither of these provisions were referred to by counsel or the courts in passing upon the cases is persuasive evidence that neither counsel nor court considered them as applicable to the instance of a contract between the express company and its messenger and the Pullman Company and its porter.

In conclusion it is to be kept in mind that the section of the Missouri statute in question was adopted in connection with the fellow-servant law, and by its express terms it limits the "liability of such railroad corporation for any damages under the provisions of this act." The Legislature of Missouri could not make a fellow-servant law, nor any law, with an extraterritorial operation. When it speaks of a contract with "any railroad corporation" it applies to a railroad corporation existing or operating in Missouri. By section 1163 of the Missouri statutes the term "railroad corporation" "shall be deemed and taken to mean all corporations, companies or individuals now owning or operating, or which may hereafter own or operate, any railroad in this state." The defendant railroad is not a Missouri corporation, nor was it operating a railroad in this state. The petition avers that it is a corporation of the state of Kentucky, and was engaged in operating a railroad extending from Ogden, in the state of Utah, to Oakland, in the state of California. The cause of action in this case originated in the state of California, where the defendant company was operating its railroad. There is no statute in the state of California invalidating such a contract as the one in question. Is it to be tolerated that this plaintiff can take service from the Pullman Company, to be performed on its sleeping car hauled by the Southern Pacific Railroad Company in the state of California, under such a contract as he has made in this case, which would preclude his right of action if sued on in that state, where the cause of action arose, and come to the state of Missouri, and by obtaining substituted service on a local agent

of the nonresident corporation not operating its trains in this state, invoke, as a ground of recovery, a local statute of this state? In California, where there is no fellow-servant act of the Legislature making the railroad company liable for an injury inflicted by a fellow servant, his right of recovery would depend upon the fact that he was not a fellow servant with the servants of the railroad company. It would, therefore, seem to be absurd that he could come to the state of Missouri and maintain his action against the defendant railroad corporation on the ground that he was its servant.

The motion to strike out the answer, above designated, is denied.