**ROBERTS v. CHICAGO, R. I. & P. R. CO. et al.**

Civ. A. No. 3279.

United States District Court
D. Minnesota, Fourth Division.

Aug. 31, 1951.

Harry S. Stearns, Jr., of St. Paul, Minn., for defendants, for the motion.

William H. DeParcq, of Minneapolis, Minn., for plaintiff, opposed.

NORDBYE, Chief Judge.

This cause is before the Court upon defendants' motion for a summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Plaintiff and defendants have entered into a stipulation of facts for the purposes of this motion. According to that stipulation, defendants own and operate the Twin Star Rocket as a joint train between Minneapolis, Minnesota, and Houston, Texas. Car number 583 is a sleeping car attached to that train. At all times relevant to this proceeding, Car 583 was owned solely by the Chicago, Rock Island & Pacific Railroad Company (hereinafter sometimes called the Rock Island Company), but was leased to the Pullman Company pursuant to a "Uniform Service Contract" between the Pullman Company and the Rock Island. Under that Uniform Service Contract, the Pullman Company agreed to furnish sleeping car service to the Rock Island either with sleeping cars owned by the Pullman Company or with sleeping cars owned by the Rock Island Company but leased to Pullman. The Pullman Company was obligated, among other things, to furnish employees to perform the usual sleeping-car services for passengers, and to make various repairs in the Pullman Company shops upon its own cars and upon those cars—including Car Number 583—which were leased to it by the Rock Island Company. The railroad possessed the right to inspect and test the sleeping cars to the extent thought desirable by the railroad. But the railroad contracted to use only reasonable care in making the inspection and tests. Pullman employees were made subject to the railroad's rules governing railroad employees to the extent that the rules might be applicable to them, and the railroad was obligated under the contract to transport Pullman employees free of charge while they were performing duties provided for by the Uniform Service Contract.

Plaintiff was employed by the Pullman Company as a porter on said Car 583 of the defendants' Twin Star Rocket. And while he was working as a porter on that car between Dallas, Texas, and Fort Worth, Texas, on or about October 27, 1949, he was injured when an upper berth in one of the car's bedrooms suddenly fell open and struck him on the head. Although the train was a joint train of defendants, it was being operated at the time of the accident solely by the Rock Island Company. Plaintiff was guilty of no negligence of any kind. The accident was proximately caused by the negligence of the Pullman Company in failing to properly inspect, maintain, and repair the upper berth and its various parts and appurtenances pursuant to the Uniform Service Contract with the Rock Island Company. Plaintiff never signed an agreement exempting defendants or anyone else from liability to him for their negligence. He has been collecting workmen's compensation under Minnesota law from the Pullman Company for his disability and injuries since the date of the accident. His contract of employment with the Pullman Company was a Minnesota contract. Plaintiff is a Minnesota resident, and the defendants are foreign corporations. Plaintiff was riding on the Pullman car solely because of his employment with the Pullman Company, and the transportation he received on Car 583 of the Twin Star Rocket as a porter was received free of charge pursuant to the Uniform Service Contract. Both the train and plaintiff's work were in commerce.

The stipulation further provides that " * * * there was no negligence upon the part of either defendant railroad company or its agents or employees, unless the negligence of the Pullman Company and its employees, in failing to discharge duties assumed under the Uniform Service Contract, is chargeable and imputable to defendants, or either of them, as a matter of law because of the relationship between said railroad companies, or either of them, as a common carrier, and plaintiff, who claims the status of a passenger.

"It is the contention of plaintiff that his status on the train was either that of a passenger, or was similar to that of a passenger, and that the defendant, Rock Island Company, as a common carrier which owned and operated the car and train involved, would be liable to plaintiff for any injuries due to negligence in the inspection, maintenance and repair of any part of the train, and that no contract between the Rock Island and plaintiff's employer would be valid or effective to shift or delegate the duty of inspection, maintenance and repair so as to bar this action.

"It is the contention of defendants that neither of them was a common carrier as to plaintiff, and that the sole duty to inspect, maintain and repair the instrumentality which caused the accident, rested upon the Pullman Company, and that upon the stipulated facts there was no duty upon the part of either defendant railroad company for the breach of which any liability could arise in favor of plaintiff."

Plaintiff's counsel concedes in his brief that, in view of the stipulated facts, plaintiff possesses no cause of action against the Burlington Road. Consequently, a summary judgment in favor of the Burlington is proper at the outset. And the issue becomes, Was plaintiff in such a relationship to the Rock Island Company that the company was liable to him for the injuries he suffered through the negligence of the Pullman Company?

Because plaintiff was being carried by the railway in interstate commerce without charge, the issue appears to be governed by federal court decisions. Kansas City So. Ry. Co. v. Van Zant, 260 U.S. 459, at pages 468, 469, 43 S.Ct. 176, 67 L.Ed. 348. Although, as plaintiff urges, the railway may have received compensation for hauling the sleeping cars, its contract with the Pullman Company did not provide for compensation for transporting plaintiff. On the contrary, the Uniform Service Contract provided in Section 3 that Pullman employees should be transported without charge while they were acting in line of their duty. In any event, the federal decisions and the state decisions appear to be similar with respect to the instant issue, and the choice of law issue raised by the parties therefore seems somewhat academic.

According to the stipulation of facts, plaintiff bases the Rock Island's liability only upon the theory that he is in a passenger-common carrier relationship with the railroad. It is helpful to note for purposes of clarity, therefore, that plaintiff does not claim to be an employee of the Rock Island or that the Rock Island is liable as lessor of the sleeping car in question. Such theories would seem untenable upon the facts advanced. Robinson v. B. & O. R. R. Co., 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849; Hukill v. Maysville & B. S. R. Co., C.C., 72 F. 745; Arrowsmith v. Nashville & D. R. Co., C.C., 57 F. 165. Further, under the stipulated facts, there is no claim that the railroad employees failed to exercise reasonable care in any respect. Consequently, the sole question here is whether plaintiff and the Rock Island Company were in a passenger-common carrier relationship which would render the Rock Island liable at common law for the negligence of the Pullman Company. If such a relationship existed, the railway would be liable. Pennsylvania Company v. Roy, 102 U.S. 451, 26 L.Ed. 141.

■ Whether a Pullman Company employee and the railroad hauling the sleeping cars are in a passenger-common carrier relationship has been discussed several times both in Federal and state court decisions. McDermon v. Southern Pac. Co., C.C., 122 F. 669; Donovan v. Pennsylvania Co., 7 Cir., 120 F. 215, 61 L.R.A. 140; Russell v. Pittsburgh, C., C. & St. L. R. Co., 157 Ind. 305, 61 I˜ E. 678, 55 L.R.A. 253, 87 Am.St.Rep. 214; Chicago, R. I. & Pac. R. Co. v. Hamler, 215 Ill. 525, 74 N.E. 705, 1 L.R.A., N.S., 674, 106 Am.St.Rep. 187; Denver & R. G. R. Co. v. Whan, 39 Colo. 230, 89 P. 39, Note, 11 L.R.A., N.S., 432; Cato v. So. Pac. Ry. Co., 151 Ga. 308, 106 S.E. 272; 13 C.J.S., Carriers, § 547, page 1052. These decisions, which represent the majority and sounder rule, hold that the railroad and Pullman Company employees like plaintiff are *not* in a common carrier-passenger relationship with respect to liability for injuries suffered by the Pullman employee. The cases proceed principally upon the premise that a railway is not bound to haul Pullman cars and consequently is not a common carrier with respect to them. Cf. Pullman Palace-Car Co. v. Mo. Pac. Ry. Co., 115 U.S. 587, 589, 6 S.Ct. 194, 29 L.Ed. 499. That is, the courts hold that the railroad is not a common carrier of Pullman cars or of the Pullman employees who are employed on the Pullman cars. The relationship between the railroad and the Pullman Company and the Pullman employees arises out of a special contract, not from the carrier's common law duties as a common carrier. The cases add that porter and other Pullman Company employees like conductors occupy the sleeping cars as a part of their employment by the Pullman Company, not for the primary purpose of a journey from one point of the line to another, or as a person whose presence is incidental to the shipment of goods which the carrier is bound to accept. Consequently, they are not considered passengers of the railroad. Note, 11 L.R.A., N.S., 432.

In Donovan v. Pennsylvania Co., 120 F. 215, at page 218, the Court of Appeals for the Seventh Circuit said, "* * * Similarly, a railroad company is not a common carrier of common carriers of passengers. It owes no duty to sleeping car companies to haul their cars and clerks and porters, * * *."

And in McDermon v. Southern Pac. Co., 122 F. 669, at page 672, the Circuit Court for the District of Missouri quoted with approval from Russell v. Pittsburgh, etc., Ry. Co., 157 Ind. 305, 61 N.E. 678, 55 L.R.A. 253, 87 Am.St.Rep. 214, wherein the court held with respect to a Pullman porter, "'If his carriage is not in the performance of a duty imposed upon the carrier by law, then it will depend upon the terms of his particular contract with the railroad company whether or not there is any liability. * * The appellant did not occupy the position of an ordinary passenger upon the appellee's train. He was not being carried upon any journey from one point to another, nor was his presence incidental to the shipment of goods which the carrier was bound to accept. He occupied the sleeping car as a part of his employment with the Pullman Company. * * * In no sense was

the appellee bound to accept the appellant upon its trains solely because he occupied a palace.car tendered by the Pullman Company, for the obvious reason that the carrier was under no legal obligation to accept and haul the sleeping car itself. Counsel for appellant urge the argument that it is customary for sleeping cars to be attached to railway trains, thus affording a great convenience to travelers, and hence the carrier is not proceeding outside of its regular business in accepting such coaches. But counsel failed to distinguish between a departure from the legitimate business of a carrier and the doing of the act which, though within the general scope of its powers, is not imposed upon it as a duty. * * * no one would seriously contend that these acts are such as the carrier must perform. He may perform them, but, if he refuses, he cannot be proceeded against as for a violation of his common-law duty. * * * We conclude, therefore: First that the appellee was under no legal duty to receive either the appellant or the car upon which he rode, since the appellant was not, and did not purport to be, a passenger, but occupied the sleeping car under a special contract between the Pullman Company and the appellee; * * *.' "

In Baltimore & O. S. .W. Ry. Co. v. Voigt, 176 U.S. 498, 20 S.Ct. 385, 44 L.Ed. 560, the United States Supreme Court considered the relationship between an express company employee and a railroad which hauled the express car under contract with the express company. The court held that the messenger was not like the ordinary passenger who was carried on the train and consequently was not protected by the rules enunciated in New York Central Railroad Company v. Lockwood, 17 Wall. 357, 21 L.Ed. 627, which applied only to persons in a true passenger-carrier relationship with the railroad. 176 U.S. at page 513, 20 S.Ct. at page 390, 44 L.Ed. 560, the Supreme Court said,

" * * * His position does not resemble the one in consideration in the Lockwood and similar cases, * * *. Doubtless, had Voigt only desired the method of transportation afforded the ordinary passenger,

he would have been entitled to the rule established for the benefit of such a passenger. But this he did not desire. He was not asking to be carried from Cincinnati to St. Louis, but was occupying the express car as part of his regular employment, and as provided in a contract which, as we have seen, the railroad company was under no local compulsion to enter into.

" * * * His position is one created by an agreement between the express company and the railroad company, adjusting the terms of a joint business,—the transportation and delivery of express matter. * * *

"* * * it is manifest that the relation existing between express messengers and transportation companies, under such contracts as existed in the present case, is widely different from that of ordinary passengers, and that to relieve the defendant in error from the obligation of his contract would require us to give a much wider extension of the doctrine of public policy than was justified by the facts and reasoning in the Lockwood Case."

As pointed out by the court in McDermon v. Southern Pac. Co., C.C., 122 F. 669, at page 673, on the facts of the Voigt case, "I am unable to perceive any difference in principle between the porter on a car of the Pullman Company and that of a messenger in an express car."

Plaintiff urges that if he cannot recover here, he is a virtual trespasser. But plaintiff obviously is not a virtual trespasser merely because he cannot recover from the railroad for the negligence of the Pullman Company. His many other rights are not involved here.

Plaintiff also urges that some of the above cited cases are not in point because they involved the validity of contracts in which the Pullman employees released the railroad from liability for negligent acts. But analysis of the cases shows that the court was required to determine if a passenger-carrier relationship existed in those cases before it could determine if the release was valid. That is, the release would be invalid if a true passenger-carrier relationship existed. Lockwood .v. New York

Central R. R. Co., supra. The cases held that a passenger-carrier relationship did not exist and therefore that the releases in the cited cases were valid.

In both Sager v. Northern Pacific Ry. Co., C.C., 166 F. 526, and Brewer v. N. Y. L. E. & W. R. Co., 124 N.Y. 59, 26 N.E. 324, 11 L.R.A. 483, and some of the other cases relied upon by plaintiff to establish a claimed passenger relationship to the Rock Island, the employee's suit was predicated upon the negligence of railroad employees, not upon that of the lessee's employees. This Court does not purport to dispute those and similar cases. Nor do these cases purport to dispute the cases cited above as authority for the fact situation now before this Court. The situations are distinguishable and consistent. Because plaintiff may recover from the railroad as a passenger when injured by the negligence of the railroad does not mean he can do so when injured by the negligence of the Pullman Company. Denver & R. G. R. Co. v. Whan, supra.

The Sager case is in point here for the proposition that the contract between the Pullman Company and the Rock Island could not prevent plaintiff from recovering from the Rock Island for injuries plaintiff suffered from negligence of the Rock Island employees. But neither plaintiff nor the negligent Pullman employees were in a master-servant relationship with the Rock Island, although, as plaintiff notes, the plaintiff was subject to rules of the railroad company so far as they might be applicable to him and the railroad possessed varying duties concerning Pullman operations. Robinson v. B. & O. R. R., supra. Analysis of the Uniform Service Contract between the Pullman Company and the Rock Island fails to indicate that the railway retained any control which distinguishes this case from the cited cases.

In view of these premises, therefore, plaintiff was not in a passenger-common carrier relationship with the defendant Rock Island Railroad Company upon the facts presented, and he cannot recover from the Rock Island Company upon the basis presented. A summary judgment in favor of both the Rock Island Company and the Burlington should be, and hereby is, granted. It is so ordered. Let judgment be entered accordingly.

An exception is reserved to the plaintiff.