HENDRY, Chief Judge.
This is an appeal by the plaintiff, Charles Maultsby, from a final judgment entered pursuant to a jury verdict in favor of the defendant, Atlantic Coast Line Railroad Company.
The plaintiff sustained head injuries while working aboard an Atlantic Coast Line train in Sarasota, Florida on April 30, 1962. Plaintiff, an employee of the Pullman Company, was working at the time of the accident as a porter on the pullman car, “Florida Lakes” which was part of an Atlantic Coast Line train.
The train had arrived in Sarasota from Chicago, Illinois, late in the afternoon on the day preceding the accident, and was scheduled to depart on its return to Chicago on the following morning.
After the passengers were let off at the Sarasota station the train was backed up to the coach yard about one-quarter of a mile away and secured for the night. Before being secured, the engine and another car were reversed to the north end of the train so that the train was in proper configuration to proceed north the following morning.
The plaintiff slept in his pullman car that night as he was permitted to do. The train *562 was scheduled to depart at 10:05 A.M. the next morning; and the passengers were to be picked up at the station shortly before that time.
Plaintiff awoke on the morning of April 30, and proceeded to “set up” the car, i. e., lay out soap, towels and coat hangers. He then proceeded to close and lock the upper berths.
Plaintiff testified that at the time of the accident he was standing on a ladder (furnished by the Pullman Company) pushing up the upper berth in bedroom D which is usually a hard one to close, when the train which had been standing still made an unusual lurch throwing him from the ladder causing him head injuries.
A fellow pullman conductor testified that when he arrived at the train he saw the plaintiff outside of his car holding a towel to his head. When he asked what had happened, the plaintiff replied that while he was making an upper berth he slipped off the ladder, fell and hurt himself. This conductor testified that the train did not move until thirty-five or forty minutes from the time he arrived. A clerk of the Pullman Company testified that when the train reached Tampa, he interviewed plaintiff to find out the details of the accident and to see if a replacement was necessary. He testified that plaintiff stated that he fell backwards off a ladder while making up a berth and that the train was standing still at the time.
The plaintiff contends that the trial court erred in refusing to instruct the jury that the plaintiff occupied the status of a passenger and therefore the defendant owed to him a duty of exercising the highest degree of care for his safety. The plaintiff also contends that it was error to refuse to instruct the jury on the doctrine of res ipsa loquitur and in instructing the jury on the defense of contributory negligence.
The court instructed the jury that the defendant owed to the plaintiff the duty of ordinary reasonable care. The plaintiff asserts that he was in a common carrier-passenger relationship insofar as the duty of care owed to him by the railroad is concerned.
A common carrier is required to exercise the highest degree of care for the safety of its passengers.[1] The question is then, was the plaintiff in a common carrier-passenger relationship with the defendant? From the discussion set forth below we have concluded that he was not in such a relationship. j
The Supreme Court of the United States has stated that a common carrier may become a private carrier when as a matter of accommodation or special engagement it undertakes to carry something which it is not its business to carry.[2] Subsequently, the court indicated that a common carrier is not obliged in law to carry pullman cars.[3] From this, a majority of the courts have held that a railroad is not a common carrier of pullman cars or of the pullman employees who are employed thereon.[4] In Roberts v. Chicago R. I. & P. R. Co., note 4, it was stated that:
“The relationship between the railroad and the Pullman Company and the Pullman employees arises out of a special contract, not from the carrier’s common law duty.as a common carrier. The cases [which represent the majority and sounder rule] add that porter and other Pullman Company employees like con *563 ductors occupy the sleeping cars as a part of their employment by the Pullman Company, not for the primary purpose of a journey from one point of the line to another, or as a person whose presence is incidental to the shipment of goods which the carrier is bound to accept. Consequently, they are not considered passengers of the railroad.”
In the absence of any federal statute, the question of whether the relationship of passenger and carrier exists and the liability of the carrier to one for injuries sustained in the course of interstate transportation is regulated by state law.[5]
While our courts have not ruled directly on this question, the district court for the Southern District of Florida held valid a contract exempting any railroad over whose line the car on which a pullman company employee was employed might run from liability for injury to such an employee after determining that a pullman company employee does not occupy the relation of passenger to the railroad.[6]
We have therefore concluded that the plaintiff was not in a common carrier-passenger relationship with the defendant at the time of the accident and thus the trial court was correct in refusing to instruct the jury that the plaintiff occupied the status of a passenger owing to him a duty to exercise the highest degree of care for his safety. We have also concluded that plaintiff’s remaining contentions are without merit.
Accordingly the judgment appealed is affirmed.
Affirmed.

. McCormick Shipping Corporation v. Warner, Fla.App.1961, 129 So.2d 448.

. New York C. R. Co. v. Lockwood, 17 Wall. 357, 21 L.Ed. 627 (1873).

. Pullman’s Palace Car Co. v. Missouri Pacific R. Co., 115 U.S. 587, 6 S.Ct. 194, 29 L.Ed. 499 (1885).

. Roberts v. Chicago, R. I. & P. R. Co., 99 F.Supp. 895, 897 (D.Minn.1951), and casos cited therein, in particular Denver & R. G. R. Co. v. Whan, 39 Colo. 230, 89 P. 39, 11 L.R.A.,N.S., 432 (1907).

. Eubanks v. Southern Ry. Co., 244 P. 891 (S.D.Fla.1917); Wiley v. Grand Trunk Ry. of Canada, 227 P. 127 (W.D.N.Y.1915); Nevill v. Gulf C. & S. F. Ry. Co., Tex.Com.App., 244 S.W. 980 (1922).

. Eubanks v. Southern Ry. Co., note 5, supra.