[No. 4712.]

## The Denver & Rio Grande Railroad Company v. Whan.

1. **Railroads—Liability for Injuries—Limitation by Contract— When Valid.**

While a common carrier may not exempt itself by contract from liability for negligently performing a service which it is its duty to perform, it may do so with respect to those duties

which it is not so bound to perform, and in such cases its liability to one injured will depend upon the terms of such contract. —P. 236.

**2. Railroads—Sleeping Car Companies—Sleeping Car Employees —Relation.**

A railroad company is under no obligation as a common carrier to haul either the sleeping cars of another or the persons employed in connection therewith, and therefore it has the legal right to dictate the terms upon which it will do so.—P. 237.

**3. Same—Liability for Injuries—Contracts Exempting Liability —Validity—Constitutional Law.**

A conductor in charge of a sleeping car, hauled by a railroad company under a contract with a sleeping car company, which includes the transportation of such employee, is not a passenger; and the limitation, by the terms of such contract, of the railroad company's liability for injuries to him, is not void as against public policy, nor as being in contravention of § 6, art. 15, Colo. const., preventing discrimination, or of § 15 of the same article, providing that a contract of an employee to release his employer from liability for the negligence of the latter, shall be void.—P. 246.

**4. Same—Rights of Parties Under Contracts.**

A sleeping car company entered into a contract with a railroad company, whereby the latter agreed to haul the cars of the former; and it was further agreed that, in case of injuries to the sleeping car employees, the railroad company should only be liable to the same extent as though the employee were its own. A contract between the sleeping car company and its employee provided that the latter, while engaged in the performance of his duties, should not have the right of a passenger as against the railroad company, and the employee further released the railroad company from any liability for personal injury.  Held, that the railroad company is entitled to enforce the provisions of the contract between the sleeping car company and its employee so as to avoid any liability for an injury sustained by the latter, since such contract was made for the benefit of the railroad company.—P. 249.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Peter L. Palmer, Judge.*

Action by James A. Whan against The Denver

& Rio Grande Railroad Company. From a judgment for plaintiff, defendant appeals.

*Reversed and remanded.*

Messrs. Wolcott, Vaile & Waterman, Mr. E. N. Clark. and Mr. W. W. Field, for appellant.

Mr. B. C. Hilliard, Mr. W. T. Rogers, and Mr. J. R. Allphin, for appellee.

Mr. Justice Gabbert delivered the opinion of the court:

Appellee was employed by the Pullman company as conductor of the sleeping car "Toltec." This car was attached to a train being operated by appellant, and was derailed and partially overturned, whereby appellee was injured. He brought suit against appellant, to recover damages for the injuries sustained. There was judgment in his favor, from which the defendant appeals.

Many errors are assigned on the rulings of the court at the trial, but a determination of the questions presented for consideration by the rulings of the trial court on the demurrer to the second defense dispose of this appeal without determination of the question raised by the rulings on the trial of the case. From this defense it appears that the defendant had entered into a written contract with the Pullman Palace Car Company, by the terms of which the latter agreed to furnish the defendant sleeping cars, to be attached to its trains. By this contract it was provided that the Pullman company should remain the owner of such sleeping cars, and should have the right to collect fares from passengers who were occupants thereof, for the use of seats and berths therein; and that if any of the Pullman company's employees engaged in operating its cars should be injured in consequence of a railroad accident, or casualty, when serving in

the line of his duties, the defendant should only be liable, if at all, to the same extent that the defendant would be liable if the employee so injured were an employee of the defendant, and that the Pullman company should save the defendant harmless to any greater extent.

It is alleged that the sleeping car Toltec was being hauled over the line of the defendant under this contract at the time such car was derailed, and that plaintiff was thereon as an employee of the Pullman company.   It is further alleged that, at the time of the derailment, the plaintiff was in the employ of the Pullman company in the discharge of his duties, under and pursuant to a contract of employment, by the terms of which the plaintiff expressly agreed to assume all risk of accident or injury by railway travel or otherwise, incident to such employment, and for himself, his heirs, etc., forever released, acquitted and discharged the Pullman company and its officers and agents from all claims or liability of any nature or character for any personal injury which he might receive by virtue of his employment.   It is also alleged that by this contract the plaintiff agreed with the Pullman company that his opportunity for employment was by means of contracts wherein the Pullman company agreed to indemnify the corporations, controlling lines of railroad over which its cars were operated, against liability in cases provided for in such contracts, and that by reason thereof he ratified the same, and agreed to protect and save harmless the Pullman company, with respect to any and all moneys which it might be compelled to pay, or any liability it might be subject to under any such contract resulting from his injury, and that the contract between the plaintiff and the Pullman company might be assigned to any railroad company, and used in its defense.   It is further alleged that plaintiff, by this

contract, agreed that while traveling in the discharge
of his duties as an employee of the Pullman com-
pany, he should not have the rights of a passenger
with respect to the corporations over whose lines of
road the cars of the Pullman company might be
operated, and that he released and discharged such
corporations from all claims for liability of any na-
ture for injuries sustained while so traveling in such
employment. To this answer a general demurrer
was interposed and sustained. The contract entered
into by plaintiff with the Pullman company as plead-
ed, in so far as it is pertinent to consider, is as fol-
lows:

"Be it known, that I, the undersigned, hereby
accept employment by, and enter into the service of,
the Pullman company upon the following express
terms, conditions and agreements, which, in consid-
eration of such employment and the wages thereof,
I do hereby make, with said the Pullman company,
to wit:

*        *        *        *        *        *

"Fourth: I assume all risks of accidents or
casualties by railway travel, or otherwise, incident
to such employment and service, and hereby for my-
self, my heirs, executors, administrators, or legal
representatives forever release, acquit and discharge
the Pullman company and its officers and employees
from any and all claims for liability of any nature
or character whatsoever on account of any personal
injury or death to me, in such employment or service.

"Fifth: I am aware that said, the Pullman
company, secures the operation of its cars upon lines
of railroad, and hence, my opportunity for employ-
ment by means of contracts wherein said the Pull-
man company agrees to indemnify the corporations
or persons owning or controlling such lines of rail-
road against liability on their part, to the employees

of said the Pullman company, in cases provided for in such contracts, and I do hereby ratify all such contracts made, or to be made, by said the Pullman company, and do agree to protect, indemnify and hold harmless said the Pullman company, with respect to any and all sums of money it may be compelled to pay, or liability it may be subject to, under any such contract, in consequence of any injury or death happening to me, and this agreement may be assigned to any such corporation or person and used in its defense.

"Sixth: I will obey all rules and regulations made or to be made for the government of their employees by the corporations or persons over whose lines of railroad the cars of said the Pullman company may be operated, while I am traveling over said lines in the employment or service of said the Pullman company, and I expressly declare that while so traveling I shall not have the rights of a passenger with respect to such corporations, or persons, which rights I do expressly renounce; and I hereby, for myself, my heirs, executors, administrators or legal representatives forever release, acquit and discharge any and all such corporations and persons from all claims for liability of any nature or character whatsoever on account of any personal injury or death to me, while traveling over such lines, in said employment or service. I have read and understand every word of this paper."

The contract between the defendant and the Pullman company pleaded contained the following provision:

"That if any of the Pullman company's employees furnished with any of its sleeping or parlor cars operated under this agreement be injured or killed, in consequence of a railroad accident or casualty, when serving in the line of his duties, the

railroad company shall save harmless the Pullman company from damages, costs and expenses growing out of, or incident to, such injury or death, to the extent that the railroad company would be liable if such employee were, in fact, an employee of the railroad company, and the Pullman company shall save harmless the railroad company from such damages, costs and expenses to any greater extent.''

A common carrier may not exempt itself by contract from liability for negligently performing a service which it is its duty to perform.—*Russell v. Pittsburgh, etc., R. R. Co.,* 157 Ind. 305.

The grounds upon which this prohibition rests have been variously stated by the courts, as that such an exemption is against public policy; that the public is interested in the exercise of care and diligence on the part of the carrier; that it is unreasonable for any common carrier to contract for the privilege of being negligent; that the public is concerned with the life and security of its citizens; and that the obligations of a common carrier arise from the nature of the business in which it is engaged, and being imposed by law, it will not be permitted to escape such obligations by a contract exempting it from the consequences of negligence in the transaction of its business. On the other hand, with respect to duties which it is under no obligation to perform, it may limit its liability by contract, and in such cases the liability of the carrier to one injured by its negligence will depend upon the terms of such contract. —*Russell v. Pittsburgh, etc., R. R. Co., supra; C., R. I. & P. Ry. Co. v. Hamler,* 215 Ill. 525.

In other words, if the service is one that is not imposed upon the carrier as a duty, it may undertake it upon such terms as it may see fit. According to many authorities, the general test, then, to apply to contracts of common carriers, limiting their lia-

bility, is whether they relate to duties which they are bound to perform, or whether they relate to services which are optional for them to perform.

The Pullman company was operating the sleeping car Toltec under a special arrangement with the defendant. Its purpose in so doing was to derive revenue from passengers on the train of the defendant to which this car was attached, who desired to ride therein. The money paid by such passengers was collected by the Pullman company and belonged to it. These collections were made by, and the car was in the charge of, the plaintiff as an employee of the Pullman company. It was within the scope of the powers of the defendant to enter into the arrangement with the Pullman company it did, but it was under no obligation to do so, or to haul the car of the Pullman company for the purposes for which it was being hauled.—*Pullman Car Co. v. Mo. Pac. Ry. Co.,* 115 U. S. 587; *Express Companies,* 117 U. S. 1.

The plaintiff was not riding on the train of the defendant by virtue of any personal contract right; but as an employee of the Pullman company, and because of a contract between the Pullman company and the defendant. He was not a passenger between the points the train was being operated, and his occupation of the car was but an incident of his employment by the Pullman company. The defendant was under no obligation except as fixed by the contract between itself and the Pullman company to permit him to be upon its train in the capacity he was. The Pullman company was under no obligation to employ him. The contract by which he secured employment with the Pullman company was deliberately entered into. By the terms thereof he expressly released the defendant from all claims for liability of any nature or character on account of any personal injury while traveling over its lines in the

capacity of an employee of the Pullman company. Not being under any legal obligation to haul the cars of the Pullman company for the purpose mentioned in its contract with that company, and not being under any obligation to transport the plaintiff over its lines in the capacity he was riding, the defendant had the legal right to dictate the terms upon which it would haul the cars of the Pullman company for the purposes mentioned, and the conditions under which its employees might ride therein when being so hauled.—*B. & O. Ry. Co. v. Voigt,* 176 U. S. 498; *C., R. I. & P. Ry. Co. v. Hamler, supra; L., N. A. & C. Ry. Co. v. Keefer,* 146 Ind. 21; *Pittsburgh, etc., R. R. Co. v. Mahoney,* 148 Ind. 196; *Russell v. Pittsburgh, etc., R. R. Co., supra; Blank v. I. C. R. Co.,* 182 Ill. 332; *McDermon v. Southern Pac. Ry.,* 122 Fed. 669; *N. Y. C. & H. R. Co. v. Difendaffer,* 125 Fed. 893; *Kelly v. Mallott,* 135 Fed. 74; *Peterson v. C. & N. W. R. Co.,* 119 Wis. 197; *Alexander v. Toronto & N. R. R. Co.,* 35 U. C., Q. B. 453; *Blank v. I. C. R. Co.,* 80 Ill. App. 475; *Bates v. Old Colony R. Co.,* 147 Mass. 255; *Robertson v. Old Colony R. Co.,* 156 Mass. 525; *C., M. & St. P. Ry. Co. v. Wallace,* 66 Fed. 506; *Coup v. W., St. L. & P. Ry. Co.,* 56 Mich. 111.

Such contracts as we are considering are not against public policy, and may be enforced, because their conditions are in no sense injurious to the interests of the public. The plaintiff was not compelled to enter into the contract in order to obtain the rights of a passenger. He sought something more, whereby his relation, instead of passenger, was that of an employee of the Pullman company, and he was upon the train solely for the purpose of transacting the business of his employer by virtue of the contracts pleaded. Perhaps, as a matter of precaution, we should here add that for some purposes the plaintiff might be regarded an employee of the de-

fendant, but no question is involved in this case which renders it necessary to consider that proposition. The question presented for our determination by the contracts pleaded is one of first impression in this state, and we will add a few excerpts from some of the authorities cited.

In *B. & O. Ry. Co. v. Voigt,* the supreme court of the United States had under consideration contracts similar to those presented in the case at bar. An express company had entered into a contract with a railway company to furnish it cars for the transaction of its express business, to be transported by its fast passenger trains, together with one or more persons in charge of express packages, known as express messengers, and for that purpose to be allowed to ride in the express cars.   By the contract the express company agreed to protect the railroad company and hold it harmless from all liability it might be under to employees of the express company for any injury sustained by them while being so transported by the railroad company.   Voigt was employed by the express company under a contract in writing, signed by him, whereby it was agreed between him and the express company that he assumed the risk of all accident or injury he might sustain in the course of his employment, and agreed to indemnify and hold harmless the express company from any and all claims that might be made against it on his part for any damages sustained by him by reason of any injury resulting from the negligence of the railroad company, and to execute and deliver to the railroad company a release of all claims and demands and causes of action arising out of, or in any manner connected with, his employment by the express company; and expressly ratified the agreement between the railroad company and the express company.   He entered into this contract freely and vol-

untarily, and obtained the benefit of it by securing his appointment as messenger. He was injured in a collision, and brought suit against the railway company to recover damages. The court said:

"The question we are asked to answer is, whether William Voigt, the defendant in error, can avoid his agreement, that the railroad company should not be responsible to him for injuries received while occupying an express car as a messenger in the manner and circumstances heretofore stated, by invoking that principle of public policy which has been held to forbid a common carrier of passengers, for hire, to contract against responsibility for negligence?"

After pointing out that the railway company was under no obligation to enter into such contract with the express company, in the course of the opinion the court said:

"It is evident that by these agreements there was created a very different relation between Voigt and the railway company than the usual one between passengers and railroad companies. Here there was no stress brought to bear on Voigt as a passenger desiring transportation from one point to another on the railroad. His occupation of the car, specially adapted to the uses of the express company, was not in pursuance of any contract directly between him and the railroad company, but was an incident of his permanent employment by the express company. He was on the train not by virtue of any personal contract right, but because of a contract between the companies for the exclusive use of a car. His contract to relieve the companies from any liability to him or to each other for injuries he might receive in the course of his employment, was deliberately entered into as a condition of securing his position as messenger. * * * He was not asking to be car-

ried from Cincinnati to St. Louis, but was occupying the express car as part of his regular employment, and as provided in a contract which, as we have seen, the railroad company was under no legal compulsion to enter into.''

A contract in all respects similar to the one in the case at bar was considered in *C., R. I. & P. Ry. Co. v. Hamler*, except that instead of a conductor of the Pullman company, it was a porter, who entered into such contract, and sought to recover damages from the railroad company because of its alleged negligence. The court decided that such 'a contract is valid, and not void, as against public policy, and stated:

''There is no difference whatever in principle between the case of a porter on the car of the Pullman company and a messenger in an express car. It is no part of the contract or obligation of a common carrier of passengers to furnish berths or the services of a porter to make up beds or perform other services for passengers.  *  *  *  A railroad company in its business as a common carrier undertakes to use the care and diligence required by law in the transportation of passengers, and will not be permitted to absolve itself from its duties by a stipulation in the contract of carriage by which a passenger is to take the risk of its negligence, but if the service is one that is not imposed upon it as a duty, it may undertake it upon such terms as it may see fit. There can be no doubt that the defendant is not bound to haul sleeping cars tendered to it by the Pullman company, with its conductors, porters, or other employees.  *  *  *  The defendant might undertake to receive and haul the cars of the Pullman company, but in doing so had a right to impose such terms as it might elect. This has been the opinion of the courts in all cases involving such contracts

as the one here in question, which have been enforced in case of express cars, circus trains, and Pullman cars, which the carrier was not bound to receive and haul as a common carrier."

In *L., N. A. & C. Ry. Co. v. Keefer* it was held (quoting from the syllabus):

"A railroad company, in carrying goods for an express company under a special agreement with such company, is a private carrier of goods, and is not performing a duty as a common carrier."

It was also decided that:

"A contract between a railroad company and an express company by which the latter assumed all risks and damages to its messengers while on the railroad, is binding upon an express messenger who entered into a contract with such express company, thereby assuming all risk of accidents and danger incident to such employment, however occasioned."

In the opinion it was said:

"Appellee, when he went upon the appellant's train, and took charge of the express packages in the baggage car, did not go as a passenger who merely desired to be carried on the train from one point to another. Carriage was not the object of his going upon the train; that was merely incidental. His purpose was not to be upon the train in the cars provided for passengers, but that he might handle and care for the property of his employer thereon in the space set apart in the baggage car for that purpose. Under the authorities cited it was not the duty of appellant, as a common carrier, to carry for the express company the goods or messengers in charge of them. The contract between appellant and the express company gave it and its messengers rights which appellant, as a common carrier, could not have been compelled to grant."

In *Russell v. Pittsburgh, etc., R. R. Co.* a contract between the Pullman company and a porter in charge of one of its cars, in all respects similar to those pleaded by the defendant, was under consideration. In speaking of the rights of one riding on a train, the court said:

"If his carriage is not in the performance of a duty imposed upon the carrier by law, then it will depend upon the terms of his particular contract with the railroad company, whether or not there is any liability."

In speaking of the rights of the porter who had brought suit against the railway company to recover damages for injuries sustained, the court said:

"In no sense was the appellee bound to accept the appellant upon its trains solely because he accompanied a palace car tendered by the Pullman company, for the obvious reason that the carrier was under no legal obligations to accept and haul the sleeping car, itself. Counsel for appellant urge the argument that it is customary for sleeping cars to be attached to railway trains, thus affording a great convenience to travelers; and hence the carrier is not proceeding outside of its regular business in accepting such coaches; but counsel fail to distinguish between a departure from the legitimate business of a carrier and the doing of an act which, though within the general scope of its powers, is not imposed upon it as a duty. It would be no ground for an action of *quo warranto* against the railroad corporation that it has transported circus cars, or express cars, over its line, or that a street car company has received for carriage a bag of specie; but no one would seriously contend that these acts are such as the carrier *must* perform. He *may* perform them, but if he refuse, he cannot be proceeded against as for a violation of his common-law duty. If he does agree to

perform them, he may stipulate, especially, how far his liability for negligence shall extend.''

*Peterson v. C. & N. W. R. R. Co.* is another case wherein an express messenger sought to recover for injuries sustained at the hands of the railway company, while traveling as an express messenger under a contract similar to those under consideration. The court said:

''The general question presented in this case is, whether a railway company can be relieved by contract from liability to an express messenger for personal injuries suffered by him while riding on its train, in performance of his duty, such injuries being proximately caused by the ordinary negligence of the employees of the company.'' And in disposing of the question, pertinently stated:

''The express messenger is not a person who has applied to a common carrier for transportation, and is entitled to that transportation without condition upon payment of his fare; but a person who voluntarily goes upon a train, not for transportation, but to transact certain business for the express company, which it is allowed to transact, not because the railroad company is a common carrier, but because of the contract between the express company and the railroad company, by which the express company and its messengers were granted rights which the railroad company could not be compelled to grant, as a common carrier.''

*McDermon v. Southern Pacific Ry. Co.* is another case wherein a Pullman car porter sought to recover damages from a railroad company, by reason of injuries sustained. He had also entered into a contract of the same nature as those under consideration. The learned judge quoted from *Donovan v. Pennsylvania Co.,* 100 Fed. 215, the following:

"A railroad company is not a common carrier of common carriers of passengers. It owes no duty to sleeping car companies to haul their cars and clerks and porters; and may, therefore, exempt itself from liability for negligence"; and continuing, said:

"I am unable to perceive any difference in principle between the porter on a car of the Pullman company and that of a messenger in an express car. The porter is hired and paid by the Pullman company; he is subject to its orders, and alone under its control."

*C., M. & St. P. Ry. Co. v. Wallace* was a case where the railroad company made a special contract with the proprietor of a circus to haul a special train, owned by the latter. By the contract it was stipulated that the railroad company should not be liable for any damages to the persons or property of the circus company, from whatever cause. It was held that the railroad company acted as a private, and not as a common carrier, and that as such it had the right to make the contract stipulating against liability for damages. The writer of the opinion quoted from Hutchinson on Carriers (2d ed.), § 44, as follows:

"A common carrier may, however, undoubtedly become a private carrier or a bailee for hire, when, as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry. The relation in such a case is changed from that of a common carrier to that of a private carrier, and where this is the effect of a special arrangement a carrier is not liable as a common carrier and cannot be proceeded against as such."

*Railway Co. v. Lockwood,* 17 Wall. 357, was also quoted from, with approval, as follows:

"A common carrier may undoubtedly become a private carrier or bailee for hire, when, as a matter

of accommodation or special engagement, he undertakes to carry something which it is not his business to carry.''

The power of a common carrier to limit its liability for negligence should be confined to the narrowest possible limits, and perhaps no general rule can be formulated which would serve as a test in determining the validity of special contracts between carriers and others by which the former undertake to limit their liability in this respect. For these reasons we do not wish to be understood as unqualifiedly assenting to the doctrine that when a common carrier contracts to do something within the scope of its powers, but which by law it is not required to do, it may exempt itself from the consequences of negligence in the performance of such services. Each case must necessarily depend more or less upon its own circumstances. Counsel for plaintiff contend that he was entitled to all the rights of a passenger with respect to his safety. It certainly cannot be successfully contended that plaintiff was a passenger, because he was not upon the train for the purpose of being transported to any particular point along the line of the road over which the defendant was operating its train. The fact that a person is lawfully upon a train does not necessarily constitute him a passenger, nor entitle him to the rights of one. An employee upon a train whose duty it is to assist in operating it is lawfully thereon, and by virtue of his employment travels from one point to another on the line of the road, but that does not make him a passenger, nor entitle him to the rights of one. In cases like the one at bar the particular purpose for which one is upon a railroad train by and with the consent of the carrier operating it, measures the right of the carrier to limit its liability to the person riding upon its train for such purpose. As we have said, the

plaintiff was not a passenger; he was upon the train for a particular purpose; he had no right to be there for that purpose except by and with the consent of the defendant, and hence, it had the right to fix the terms upon which it would permit him to ride upon its train for that purpose.

Counsel for plaintiff cite a great many authorities in support of their contention that he was entitled to the rights of a passenger. So far as applicable to the present case, they are to the effect that a common carrier cannot limit its liability in the discharge of duties imposed by law, and that contracts of the kind under consideration are void, because against public policy. In other words, the many authorities cited are only in point in so far as they announce the law applicable when the relationship of carrier and passenger is established, or that contracts of the character under consideration cannot be enforced. With respect to the many cases cited of mail agents who were permitted to recover damages for injuries sustained while riding upon a train in the discharge of their duties, it appears that their rights, in many instances, at least, were grounded upon the proposition that the statutes of the United States require railroad companies to carry the mails and transport the persons in charge, and that the common carrier could impose no conditions not imposed by law.

We do not understand counsel for plaintiff to contend that the *Voigt case* is not directly in point, but they say that it is opposed to the great weight of authority, and cite many cases which are contrary to the decision in that case. Whatever might be the result of a numerical comparison of the cases, deciding the questions involved in this case, *pro* and *con*, we think we should be controlled by the decision of the supreme court of the United States on these

questions, if there be no provision of the law of our state which renders it inapplicable.

It is urged by counsel for plaintiff that by virtue. of §§ 6 and 15 of article XV of the constitution, the contracts in question cannot be upheld. The evident purpose of § 6 was to prevent discrimination. There is no question of that character involved in this case. Section 15 says that a contract of an employee to release his employer from liability for the negligence of the latter shall be void. Counsel for plaintiff assert no rights under this provision further than to urge that because of its presence in the constitution we should hold contracts of the character under consideration void, as against public policy. We do not wish to be understood as construing this provision, but it does not purport, nor is it claimed, so far as the railroad company is concerned, to cover contracts of the kind pleaded, and we do not see how it can have any bearing upon the question of public policy with respect to contracts of a totally different character from those contemplated.

It is also urged by counsel for plaintiff that his contract with the Pullman company is to the effect that he would indemnify and hold it harmless with respect to any and all sums of money which it might be compelled to pay under its contract with the defendant company by reason of any injuries he might receive, and that his contract might be assigned to the railroad company, and used in its defense. Upon this assumption it is argued that the contract is one merely to indemnify the Pullman company, that the defendant company has no interest therein, and it does not appear to have been assigned. We do not think the paragraph of the contract of the plaintiff, or the one between the Pullman company and the defendant company upon which this argument is based, are the ones to consider in determining what

the rights of the defendant company may be under the contracts pleaded. By the sixth paragraph of his contract the plaintiff expressly agreed that while traveling over the lines of the railroad company upon which the Pullman company operated its cars, in the employment of the Pullman company, that he should not have the rights of a passenger with respect to such railroad companies, and released the latter "from all claims for liability of any nature or character whatsoever, on account of any personal injury or death to me while traveling over such lines in said employment or service."

This contract was made and was intended for the benefit of the railroad companies over which the cars of the Pullman company might be hauled in accordance with its contract with such railroad companies. The defendant railroad company was one of the companies for whose benefit this contract was made. That was one of its objects, and the defendant railroad company can, therefore, take advantage of, and enforce, its provisions. This identical question was under consideration by the supreme court of Indiana in *Russell v. Pittsburgh, etc., R. R. Co., supra,* wherein it was said:

"But appellant (plaintiff below, who had executed the contract) contends that inasmuch as appellee (the defendant railroad company) was not a party to the contract exempting transportation companies from liability for negligence, it cannot take advantage of its terms. The contract referred generally to transportation companies over whose lines the Pullman company should run its cars. This comprehended the appellee, and as the contract was *prima facie* for the benefit of the appellee, it will be presumed to have accepted its provisions, and it may now claim its advantages as one in whose in-

terest the agreement was executed"; and concluded by saying:

"A contract of release made between the appellant and the Pullman company inured to the benefit of the appellee referred to generally therein, and its provisions can be taken advantage of by the latter in this action."

For the error of the court in sustaining the demurrer to the second defense, the judgment of the district court will be reversed, and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.