### NEVILLE v. GULF, C. & S. F. RY. CO.
#### (No. 345–3096.)

(Commission of Appeals of Texas, Section A. June 13, 1923.)

**1. Commerce ⬅⬤⟹8(1)—Acts of Congress regulating interstate commerce supersede state laws.**

Acts of Congress regulating matters pertaining to interstate commerce supersede all state laws, and the Supreme Court of the United States is the final authority as to their interpretation.

**2. Carriers ⬅⬤⟹307(4)—Contract between news agent and agency in which plaintiff, riding free, assumed all liability for accident or injury, held to inure to benefit of railway company.**

Where plaintiff, a newsboy in the employ of a news agency, had entered into a contract whereby he assumed all risk of accident and injuries of every kind that he might sustain in the course of his employment, and the news agency in turn had contracted with the defendant railway company to manage and operate railway hotels, lunch stands, dining cars, and the business of selling newspapers, periodicals, and other articles of merchandise, in consideration of which, among other things, the railway company agreed to transport such goods, merchandise, and employees of the news agency free, and the news agency agreed to indemnify the railway company for sums paid

out on account of personal injuries sustained by employees, *held*, that the provisions of plaintiff's contract with the news agency inured to the benefit of defendant railway company in an action by such news agent for personal injuries.

**3. Carriers ⬅⬤⟹241—News agent held not passenger entitled to recover for personal injuries.**

A news agent employed by a news agency, which, under contract with defendant railway company, had agreed to indemnify the latter against personal injuries to its employees and by contract with its news agents had required the latter to assume all risk of accident or injury, cannot recover for personal injuries received by him while riding free in the course of his employment and business as news agent on one of defendant's trains.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Gid D. Neville against the Gulf, Colorado & Santa Fé Railway Company. Judgment for defendant was affirmed by the Court of Civil Appeals (187 S. W. 388), and plaintiff brings error. After judgment was reversed and remanded (244 S. W. 980), defendant's motion for rehearing was granted. Former judgment of the Supreme Court set aside, and judgment of Court of Civil Appeals affirmed.

Johnson & Harrell, of Cleburne, and S. C. Padelford, of Fort Worth, for plaintiff in error.

Brown & Lockett, of Cleburne, and Lee & Lomax, of Fort Worth, for defendant in error.

On Motion for Rehearing.

GALLAGHER, P. J. The Supreme Court, in pursuance of the opinion of this court, and upon the recommendation therein made, heretofore entered an order reversing the judgment of the trial court and the Court of Civil Appeals in this case and remanding the cause to the district court for a new trial. 244 S. W. 980. Defendant in error, in due time, filed a motion for rehearing, and same is now before us for consideration.

The parties will be designated herein as in the trial court. The facts are fully stated in our former opinion. We deem it sufficient for present purposes to state that plaintiff sued to recover damages for personal injuries which he alleged he sustained while a passenger on one of defendant's trains while in the employ of Fred Harvey News Agency. Said news agency was operating under two certain contracts made by Fred Harvey, one with plaintiff and the other with defendant. Among other defenses, defendant interposed the contract executed by plaintiff to Fred Harvey in which he agreed to enter the services of said Harvey as a news agent on

railroad trains and further agreed in the most explicit terms to assume all risk of accident and injuries of every kind which he might sustain in the course of his employment, and to release said Harvey, and any and every railroad over which he might be transported, from damages for such accidents or injuries. The injuries complained of were sustained by plaintiff in the state of Oklahoma in the course of his employment ·and while on an interstate trip from Fort Worth, Tex., to a point in Kansas. Plaintiff had no ticket and paid no fare for said trip. He was being transported upon said train under and by virtue of said contract between Fred Harvey and defendant. Said contract was a general one, by the terms of which said Harvey agreed to manage and operate all hotels and lunch stands on defendant's line of railway, to operate all dining cars thereon, and to carry on the business of selling in such hotels and lunch stands, and upon its trains, newspapers, periodicals, and other articles customarily sold by news agents. Defendant, among other obligations assumed in said contract, agreed to transport all goods, supplies, and employees required in conducting such business. The consideration to be received by it for the performance of said contract was a stipulated contingent interest in the net profits of such business.

The trial court, after hearing the evidence, instructed a verdict for defendant. Its judgment was affirmed by the Court of Civil Appeals. 187 S. W. 388. Plaintiff applied for and obtained a writ of error.

The issue involved in this case is whether plaintiff was, at the time he received the injuries complained of, a passenger on the train of defendant and entitled to protection as such. The facts material to this inquiry are undisputed, and the determination of such issue depends on whether ·the law as construed and applied by our Supreme Court in such cases, or the law as construed and applied by the federal courts in such cases, is to be followed.

In the absence of legislation by Congress on that particular subject, the, status of a person receiving interstate transportation is defined and the liability of the carrier for injuries sustained by him in the course of such transportation is regulated by the local or state law. Chicago, Milwaukee & St. Paul R. Co. v. Solan, 169 U. S. 133, 137, 138, 18 Sup. Ct. 289, 42 L. Ed. 688, 692. The Carmack Amendment to the Interstate Commerce Act (Comp. St. § 8563, subd. 5) provides that no carrier subject to the act shall directly or indirectly issue or give any interstate free ticket, free pass, or free transportation to passengers except to certain classes of persons, among whom "news boys on trains" are included. There is nothing in the entire act purporting to deal with the status of "news boys on trains" with reference to

being or not being passengers while being so transported, nor purporting to deal with the liability of the carrier for personal injuries resulting to them from its negligence. Before preparing or submitting our former opinion in this case, we made a painstaking and exhaustive search of the authorities to ascertain whether the Supreme Court of the United States, or any of the Circuit Courts of Appeals, had held that Congress, by the passage of said section, had so covered the question of transportation of persons under the exceptions embraced in subdivision 5 thereof as to clearly indicate that it intended thereby to take possession of the entire subject of such transportation, including the status of persons so transported with reference to being or not being passengers and the liability of the carriers to them for injuries resulting from negligence as to supersede all state laws and regulations with reference thereto. We found no such authority. Being unwilling, in the absence of any such holding by such courts, or any of them, to deny to a citizen· of this state the benefit and protection of its laws, we felt it our duty to apply such laws in solving the issue involved herein. Under such laws the plaintiff was unquestionably a passenger and entitled to protection as such. Texas & Pac. Ry. Co. v. Fenwick, 34 Tex. Civ. App. 222, 78 S. W. 548 (writ refused); Gulf, C. & S. F. Ry. Co. v. Wilson, 79 Tex. 371, 375, 15 S. W. 280, 11 L. R. A. 486, 23 Am. St. Rep. 345; Railway Co. v. McGown, 65 Tex. 640; Ry. Co. v. Ivy, 71 Tex. 409, 411–416, 9 S. W. 346, 1 L. R. A. 500, 10 Am. St. Rep. 758; Railway Co. v. Blalack, 105 Tex. 296, 147 S. W. 559.

Since said opinion was· prepared and submitted, the Supreme Court of the United States has, for the first time, construed said section of the Interstate Commerce Act to cover not only the classes of persons to whom such transportation may be granted, ·but to cover also the limitations and conditions upon the use of the same which may be prescribed by the carrier as well as the measure of responsibility the carrier incurs by granting such transportation and the extent of the rights accruing to persons using the same. Such holding was made by that court in the case of Kansas City Southern Railway Co. v. Van Zant, 43 Sup. Ct. 176, 67 L. Ed. ——. We quote from the opinion in that court in that case as follows:

"The provision for passes, with its sanction in penalties, is a regulation of interstate commerce to the completion of which the determination of the effect of the passes is necessary. We think, therefore, free passes in their entirety are taken charge of, not only their permission and use, but the limitations and conditions upon their use; or to put it another way, and to specialize, the relation of their users to the railroad which issued them, the· fact and measure of responsibility the railroad incurs by their issue, and the extent of the

right the person to whom issued acquires, are taken charge of. And that responsibility and those rights, this court has decided, the railroad company can control by conditions in the passes."

[1] Acts of Congress regulating matters pertaining to interstate commerce supersede all state laws, and the Supreme Court of United States is the final authority as to their proper interpretation. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257. It follows that the status of the plaintiff with reference to being or not being a passenger at the time he received his injuries and the liability of the defendant to him on account of such injuries must be determined by the rules of law announced and applied by the Supreme Court of United States and other federal courts in similar cases.

While our state Supreme Court has held railroads are by the Constitution and laws of this state constituted common carriers and that they cannot by contract absolve themselves from responsibility as such by agreeing to act or purporting to act merely as private carriers (Railway v. McGowh, 65 Tex. 640, 645), the Supreme Court of United States has adopted and consistently applied a different rule. The distinction between acting as a common or public carrier on the one hand, and as a special or private carrier on the other, is clearly and succinctly explained by Mr. Justice Hughes, speaking for the Supreme Court of United States in the case of Santa Fé Railway Co. v. Grant Bros., 228 U. S. 177, 184–186, 33 Sup. Ct. 474, 476 (57 L. Ed. 787), from which we quote as follows:

"It is the established doctrine of this court that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation. Railroad Company v. Lockwood, 17 Wall. 357; Liverpool Steam Co. v. Phenix Insurance Co., 129 U. S. 397; Baltimore & Ohio, etc., Railway Co. v. Voigt, 176 U. S. 498, 507; Knott v. Botany Mills, 179 U. S. 69, 71; The Kensington, 183 U. S. 263, 268. The rule rests on broad grounds of public policy justifying the restriction of liberty of contract because of the public ends to be achieved. The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and diligence, 'seems to put off the essential duties of his employment.' It is recognized that the carrier and the individual customer are not on an equal footing. 'The latter cannot afford to higgle or stand out and seek redress in the courts. * * * He prefers, rather, to accept any bill of lading, or sign any paper the carrier presents; often, indeed, without knowing what the one or the other contains. In most cases, he has no alternative but to do this, or abandon his business.' Railroad Company v. Lockwood, supra, pp. 378, 379. For these reasons, the common carrier in the prosecution of its business as such is not permitted to drop its character and transmute itself by contract into a mere bailee with the right to stipulate against the consequences of its negligence.

"Manifestly, this rule has no application when a railroad company is acting outside the performance of its duty as a common carrier. In such case, it is dealing with matters involving ordinary considerations of contractual relation; those who choose to enter into engagements with it are not at a disadvantage; and its stipulations even against liability for its own neglect are not repugnant to the requirements of its public service. The rule extends no further than the reason for it. It is apparent that there may be special engagements which are not embraced within its duty as a common carrier although their performance may incidently involve the actual transportation of persons and things, whose carriage in other circumstances might be within its public obligation. Baltimore & Ohio, etc., Railway Co. v. Voigt, 176 U. S. 498, and cases cited; Northern Pacific Railway Co. v. Adams, 192 U. S. 440; Long v. Lehigh Valley R. R. Co., C. C. A. 2d Circuit, 130 Fed. Rep. 870.

"Thus in Baltimore & Ohio, etc., Railway Co. v. Voigt, supra, it was held that an express messenger in charge of express matter in pursuance of the contract between the express company and the railroad company was not a passenger of the latter within the meaning of the rule of Railway Company v. Lockwood, supra; that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him for its negligence; and that such a contract did not contravene public policy. His position was one 'created by an agreement between the express company and the railroad company, adjusting the terms of a joint business—the transportation and delivery of express matter. His duties of personal control and custody of the goods and packages, if not performed by an express messenger, would have to be performed by one in the immediate service of the railroad company.' It was clear that although the messenger was actually carried on the train, and although the railroad company received compensation in connection with its contract for the express business, his relation to the railroad company was 'widely different from that of ordinary passengers,' and there was no justification for extending the doctrine restricting the freedom of contract to a case which lay entirely outside the reason which supported it."

The same distinction is recognized by the Supreme Court of Colorado in a carefully prepared opinion in the case of Denver & R. G. R. Co. v. Whan, 39 Colo. 230, 89 Pac. 39, 11 L. R. A. (N. S.) 432, 12 Ann. Cas. 732.

When a railroad as a part of its contract for the carriage of live stock requires that the same must be accompanied by an attendant furnished by the shipper and issues a pass or coupon for the transportation of such attendant, it is acting in its capacity as a common or public carrier and undertaking a service which it is its duty as such carrier to perform. In such cases any attempt to stipulate against liability for personal injury, sustained by such attendant as a result of

its negligence or the negligence of its servants, is held invalid as an unreasonable attempt to limit its liability in the performance of its public duties. It was so held both before and after the passage of the Interstate Commerce Act and of the Carmack Amendment thereto. N. Y. C. R. R. Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Norfolk Southern R. R. Co. v. Chatman, 244 U. S. 276, '37 Sup. Ct. 499, 61 L. Ed. 1131, L. R. A. 1917F, 428; Tripp v. Michigan Central R. Co., 238 Fed. 499, 151 C. C. A. 385 (petition for certiorari denied, 243 U. S. 648, 37 Sup. Ct. 475, 61 L. Ed. 945).

[2] Plaintiff's presence on said train was the result of the joint effect of his contract with Harvey and Harvey's contract with the defendant. Harvey, in his contract with defendant bound himself to indemnify it, either in whole or in part, according to the contingencies therein provided, for all sums paid out by it on account of personal injuries sustained by his employees. Under the rule adopted in the decisions of the federal courts, the provisions of plaintiff's contract with him inured to the benefit of defendant. Robinson v. Baltimore & Ohio R. R. Co., 237 U. S. 84, 35 Sup. Ct. 491, 59 L. Ed. 849; Long v. Lehigh Valley R. Co., 65 C. C. A. 354, 130 Fed. 870.

[3] In view of the circumstances under which plaintiff received the injuries complained of and the contracts pleaded by the defendant, this case belongs to the second class of cases described in Railway v. Grant, supra. The transportation of the wares of the Harvey News Agency and of the plaintiff as its employee to sell such wares to the passengers on said train was not a duty imposed by law upon the defendant. It could undertake or refuse to furnish such transportation as it saw fit. If it engaged to furnish the same, it could do so on such terms as it might deem to its interest to accept. Plaintiff was not on its train for the purpose merely of being transported from Fort Worth to said point in Kansas. Transportation was of secondary importance. The primary purpose of his presence on such train was to sell the wares of his employer to the passengers thereon during the trip. Neither the news agency nor plaintiff had a right, as a matter of law, to demand such transportation with its attending privileges and opportunities. All said parties were free to contract as their judgment might deem to their respective interests. Under the rules of law announced and applied by the federal courts in such cases, the contract entered into by plaintiff that he should not have or claim any cause of action against defendant for injuries sustained by him in the course of his employment, whether resulting from negligence of defendant or its servants, did not violate any rule of public policy and was valid and

available to defendant as a defense in this suit. Kansas City Southern Ry. Co. v. Van Zant, supra; B. & O. S. W. Ry. Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560; Northern P. R. Co. v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513; Wells-Fargo & Co. v. Taylor, 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205; Denver & R. G. Co. v. Whan, 39 Colo. 230, 89 Pac. 39, 11 L. R. A. (N. S.) 432, 12 Ann. Cas. 732; Griswold v. N. Y. & N. E. R. R. Co., 53 Conn. 371, 4 Atl. 261, 55 Am. Rep. 115.

We accordingly recommend that the motion for rehearing filed by the defendant, Gulf, Colorado & Santa Fé Railway Company, be granted, and that the judgment heretofore entered by the Supreme Court reversing and remanding this case be set aside and the judgment of the Court of Civil Appeals herein affirmed.

CURETON, C. J. On motion for rehearing, the judgment heretofore entered in this court is set aside, and the judgment of the Court of Civil Appeals is affirmed.