

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable C. D. Simmons
Comptroller, University of Texas
Austin, Texas

Dear Sir:    Opinion No. O-5393
             Re: Interpretation of S.B. 287, Acts
                 1943, Regular Session, Forty-
                 eighth Legislature.

     We are in receipt of your opinion request reading in part as follows:

     "The Board of Regents of the University of Texas has directed me to request of you an opinion as to your interpretation of Senate Bill No. 287, Acts Regular Session, 48th. Legislature.

     "The board of Regents particularly desires your interpretation of the effect and meaning of the language of the Bill which reads as follows:

     "'The Board of Regents of the University and the Commissioner of the General Land Office, in considering an application for an extension or renewal of any such lease above described, shall take into consideration in establishing the considera- tion for such lease the diligence with which the lessee has followed his duties under the existing lease, the present value of the land upon which an extension or renewal of the lease is sought, and all other good business practices.'"

     S. B. 287, Acts 1943, Regular Session, 48th. Legis- lature, which now appears as Article 5341d of Vernon's An- notated Civil Statutes, reads as follows:

     "Section 1. In the case of any nonproducing oil, gas or mineral lease on University land, if one hundred twenty (120) days before expiration of the primary term there be in effect any restrictions issued by a Federal war agency prohibiting the drill- ing or completion of a well thereon, the holder of such lease shall have the right to negotiate an ex- tension or renewal of such lease for a period of not

longer than two (2) years with the Board of Regents of the University of Texas and the Commissioner of the General Land Office.

"The Board of Regents of the University of Texas and the Commissioner of the General Land Office, in considering an application for an extension or renewal of any such lease above described, shall take into condideration in establishing the consideration for such lease the diligence with which the lessee has followed his duties under the existing lease, the present value of the land upon which an extension or renewal of the lease is sought, and all other good business practices. The lessee in presenting his application for extension or renewal of such lease or leases shall present evidence to the Board of Regents of the University of Texas and to the Commissioner of the General Land Office showing it was impossible for him or any of his co-owners to comply with the restrictions which he claims prohibited the drilling or completion of the well on said tract.

"If the lessee should claim as grounds for an extension or renewal of any such lease that there is insufficient acreage within the tract under lease by him to comply with the Federal restriction then no extension or renewal shall be granted unless said lessee also show that there is no adjacent and adjoining acreage to said tract wherein said applicant is a party in interest that could have been combined with the tract upon which the application for extension or renewal is made in order to comply with the Federal restriction.

"Sec. 2. The Commissioner of the General Land Office is hereby authorized to issue to the lease owner such instrument in writing in the nature of an extension or renewal of such lease as may be necessary or proper to carry into effect the foregoing provision of this Act.

"Sec. 3. The provisions of this Act are and shall be held and construed to be cumulative of all General Laws of this state on the subject treated of and embraced in this Act when not in conflict herewith, but in case of conflict, in whole or in part, this Act shall control.

"Sec. 4. If any section, subdivision, para-

graph, sentence, or clause of this Act be held
to be unconstitutional, the remaining portions of
same shall nevertheless be held valid and binding

"Sec. 5.  The fact that certain leases on
University lands are of such size or shape as to
create the probability that they cannot be devel-
oped under governmental restrictions on oil devel-
opments, creates an emergency and imperative public
necessity demanding the suspension of the Rule re-
quiring bills to be read on three several days, and
said Rule is hereby suspended, and this Act shall
take effect and be in force from and after its
passage, and it is so enacted."

It is our opinion that S. B. 287 gives to a lessee
of University land, who brings himself within its terms, the
right to a refusal of an extension or renewal of his lease
for such term as the Regents and the Land Commissioner may
fix (not to exceed two years) and upon a consideration to be
determined by them.  The word "shall" is used in the first
paragraph of S. B. 287 in connection with the granting of a
benefit or a right.  Under such circumstances the meaning is
held to be mandatory rather than permissive.  39 Tex. Jur.
37.  In other words the Regents and the Land Commissioner may
make an extension or renewal with present lessees of Univer-
sity lands, who come within the terms of the Act, without the
necessity of a public sale and competitive bidding as provided
for by Article 2603a, Vernon's Annotated  Civil Statutes.

The Act gives the Board of Regents and the Land Com-
missioner broad discretion in the matter of fixing a consid-
eration.  The Act makes no provision for an appeal from the
action of the Regents and the Land Commissioner.  Their action
in fixing a consideration would be, in our opinion, final un-
less an interested party were able to show a clear case of an
abuse of discretion on their part.  Securities State Bank of
San Juan v. State, 169 S. W. 2nd. 554, refused for want of
merit.  However, the Regents and the Land Commissioner would
not be authorized to discriminate between lessees similarly
situated, either in regard to the consideration or the period
of their extension or revewal.  Railroad Commission v. Shell,
139 Tex. 66, 161 S. W. (2) 1022.

The next question is whether or not Section 5, Arti-
cle 2603a, Vernon's Annotated Civil Statutes, which provides
for a bonus, a royalty of 1/8 of gross production and a delay
rental of 10¢ per acre per year, applies to an extension or
renewal under S. B. 287.  Article 2603a by its terms applies
to a sale at public auction on competitive bids.  The sale

must be held by the Board for Lease of University Lands, which Board consists of two members of the Board of Regents and the Land Commissioner. Article 2603a, Sec. 1, Vernon's Annotated Civil Statutes. Senate Bill 287, on the other hand, authorizes the entire Board of Regents and the Land Commissioner to grant an extension or renewal to present lessees for a limited period without competitive bids. The provision in Art. 2603a, Sec. 5 for assessing the highest bidder a special fee of one (1%) percent of the total sum bid to pay the expenses of the sale, including the fee of the auctioneer crying the sale, would clearly not apply to an extension or renewal under S. B. 287. The fact that the lessee's right to invoke the provisions of S. B. 287 is conditioned on a showing that he has been unable because of Federal restrictions to enjoy the drilling rights which his lease confers, indicates to our mind an intention to give such a lessee a further opportunity for enjoying such rights without penalty. We take the view that S. B. 287 was intended to stand in place of performance for a maximum period of two years, if the Board of Regents and the Land Commissioner should, in their good judgment, determine that a lessee of University land is entitled to invoke its provisions and is deserving of its benefits.

The common law recognizes a doctrine of implied intention by which certain kinds of contracts are suspended because of temporary impossibility of performance arising after the date of execution and without fault of the parties.

The general rule is epitomized in the Restatement on Contracts, Sec. 462, as follows:

"Temporary impossibility of such character that if permanent it would discharge a promisor's entire contractual duty, has that operation if rendering performance after the impossibility ceases would impose a burden on the promisor substantially greater than would have been imposed upon him had there been no impossibility; but otherwise such temporary impossibility suspends the duty of the promisor to render the performance promised only while the impossibility exists."

See, also, Vol. 6, Williston on Contracts (Rev. Ed. 1938) Sec. 1957; 17 C.J.S. 954, 956.

We do not here hold that such rule obtains in Texas, as we do not think that such a determination is necessary in order to answer your question. However, we do believe that the Legislature in enacting S. B. 287 had in mind the equitable claims arising from the plight of a lessee who is unable to

reap the fruits of his lease because of a Federal ruling and these are the same considerations that underlie the common law doctrine just mentioned. Upon a consideration of the special circumstances under which S. B. 287 becomes operative and in view of the objects of the Act, we are of the opinion that the Act is complete within itself and that the provisions of Article 2603a, requiring a minimum consideration for leases let at public auction do not apply.

We do not think that your question involves a determination of the rights of lessees of University land under Sec. 7, Title III of the Second War Powers Act, approved March 27, 1942. That section provides:

"(7) No person shall be held liable for damages or penalties for any default under any contract or order which shall result directly or indirectly from compliance with this subsection (a) or any rule, regulation, or order issued thereunder, notwithstanding that any such rule, regulation or order shall thereafter be declared by judicial or other competent authority to be invalid." U. S. Cong. Service Code (1942) 247; Tit. 50, U.S.C.A. App. Sec. 633 (7).

Subsection (a) which is referred to in the above quotation is the section conferring priority powers on the President. This section is the present source of authority for Conservation Order No. M-68 as amended (8 F.R. 104) and Preference Rating Order No. P-98, as amended (7 F.R. 2719). These orders, by prescribing conditions under which priority directives on strategic materials are held not to apply, will have the effect of rendering temporarily impossible the performance by some lessees of the drilling provisions under existing University leases.

It is expressly provided in Sec. 1501, Title XV of the Second War Powers Act, 1942 (U.S. Cong. Service Code, 253; Tit. 50 U.S.C.A. App. Sec. 645) that Title III of that Act, which includes Sec. 7, above quoted, "shall remain in force only until December 31, 1944, or until such earlier time as Congress by concurrent resolution, or the President, may designate."

We are familiar with the rule which gives Federal legislation precedence over other State statutes where Congress has legislated in regard to a subject which is within its constitutional control and over which it has the right to assume exclusive jurisdiction and has manifested its intention to deal therewith in full. 11 Am. Jur. 307; 17 R.C.L. 694;

Neville v. G. C. & S. F. Ry. Co. (Com. App.) 252 S.W. 483.
However, in our opinion, Sec. 7 of Title III of the Second
War Powers Act, 1942, is by its terms operative only to the
extent of absolving a lessee from liability "for damages or
penalties for any default." Such is the general rule with
reference to contracts under which performance is rendered
illegal or impossible because of conditions occurring sub-
sequent to the date of their execution. Cinquegrano v. T.A.
Clarke Motors (R.D.) 30 A(2d) 859; Scantz v. American Auto
Supply Co., 36 N. Y. S. (2d) 747; 20 Texas Law Review, 710.
The contrary rule seems to have been adopted in Texas where
the impossibility in performance resulted from the adoption
of prohibition under the Local Option Statute. Houston Ice
& Brewing Co. v. Keenan (1905) 99 Tex. 79, 88 S.W. 197. The
right to a suspension of contracts during the period of tem-
porary impossibility does not deem to be covered by the Fed-
eral Act above quoted. The Federal Act merely says that
"no person shall be held liable for damages or penalties for
any default under any contract" etc. After the expiration of
the primary term in a  standard oil and gas lease, if the de-
lay rentals have been paid and no well has been drilled, the
obligations of the lessee are ordinarily at an end. Failure
to drill during the primary term is not a "default" unless
the absolute form of drilling clause is employed. 31 Tex.
Jur. 740. This is not the form of lease which the statute
(Art. 2603a, Sec. 5, Vernon's Ann. Civ. St.) authorizes the
Board for Lease of University Lands to make, nor the lease
provided for in your Form No. 4. See our Opinion No. O-493,
issued on March 15, 1939, to Mr. Leo C. Haynes, Secretary of
the Board of Regents. We are not here concerned with whether
lessees of University lands have common law rights independ-
ent of the Federal statute to a suspension of their lease
agreements for such period as the enjoyment of the drilling
rights thereunder may have been rendered illegal or impossible
as a result of compliance with a rule, regulation or order of
a Federal War Agency. Our holding is that S.B. 287 is not
rendered inoperative, either by reason of the Federal statute
or by reason of the lessee's common law rights. It clearly
gives a lessee of University lands, who comes within its
terms, a right to something he did not have before, viz. the
refusal on a present extension or renewal for a fixed period
beyond the primary term of his lease.

Trusting that the foregoing sufficiently answers
your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Fagan Dickson
Fagan Dickson
Assistant

FD:BT:wc

APPROVED JUNE 24, 1943
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman